No. 42.—MAYOR AND COUNCIL OF THE CITY OF MACON, plaintiffs in error, vs. MARCUS A. FRANKLIN, defendant.

[1.] A license or liberty attached to real estate must generally be made by grant, and when made by parol is revocable, unless the enjoyment of it is preceded necessarily by the expenditure of money, and the grantee has made improvements, and invested capital in consequence of it. And in that event he occupies the position of a purchaser for value.

[2.] A dedication to public use, is when one being the owner of lands, consents, either expressly or by his actions, that it may be used by the public for a particular purpose.

[3.] There is no particular form of making a dedication; all that is necessary, is the assent of the owner, and the fact that it has been used by the public for the purpose of the appropriation.

[4.] A public square, or a common, in a City or Town, is the subject of dedication.

[5.] A dedication of land to public use is in the nature of an estoppel *in pais,* and where an attempt is made by the proprietor to revoke it by a sale of the land, he may be enjoined by any person interested in the use.

[6.] When a dedication is made by a Town or City, it enures to the benefit of all who are at the time, or may afterwards become citizens of the corporation.

[7.] It is not necessary that the use should be for the term of years necessary to presume a grant, but may be for a less term. It should however, be for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment.

[8.] Declarations made by the auctioneer at the sale of Town lots, and assented to by a Committee of the City Council, appointed to superintend the sale, "that certain lots would not be sold, but held as a public reserve:" *Held,* to be a dedication; and when subsequently ratified by the Council: *Held,* that the ratification relates back to the time of the sale.

[9.] A purchaser of property at the sale, who has sold to a third person, with or without a warranty: *Held,* to be a competent witness to prove the dedication.

[10.] A map of the City, made by an individual on his own account, and kept by the City Council, in their chamber, on which the reserved lots are delineated as an open square or common, is admissible in evidence, to show a recognition of the dedication.

[11.] A deed executed by the City to a purchaser of a lot adjoining the land thus dedicated, is admissible evidence to show, in connection with the other facts and circumstances, a recognition of the dedication.

[12.] The minutes of the City Council, showing the adoption of a report of a committee of that body, in which it is stated that certain lands had been previously pledged by the City as a public reserve : *Held,* to be admissible to prove the ratification of the previous dedication, and that the adoption of such report is itself a dedication.

In Equity, in Bibb Superior Court. Tried before Judge STARKE. May Term, 1852.

This bill was filed to restrain the City authorities of Macon, from selling a certain lot of land in the City, which, it was alleged, had been perpetually set apart and dedicated to the use of the public, when the lots in that part of the City were originally surveyed and sold. A demurrer for want of equity, and because the dedication was not charged to have been in writing, was overruled.

The complainant introduced from the records of the Council, the report of a committee made in 1846, who, in answer to an application to lease the lot, had reported that it was reserved to the public; which report was adopted by a vote of the Council. The interrogatories of sundry persons, who had purchased in the vicinity of the lot in question, were then read; who testified that it had been stated by the auctioneer at the sale, that this lot was to be a public lot or common; the Mayor then in office, and some of the Council, being present and assenting thereto. Sundry deeds made by the Mayor to purchasers at the sale, for lots in the vicinity, as also a map of the City, not made by order of the Council, but referred to by them in their deeds, &c. were introduced by complainant. To all of this evidence objection was made by defendant, but overruled by the Court. The Court charged the Jury that no particular form was necessary to constitute a dedication for public use; that whatever showed the assent of the proprietor thereto, the sale of other property under that understanding, and for a price thereby enhanced, and the subsequent use of the land by the public, was good evidence to show such dedication. That if the City Council sold lots to purchasers, with the understanding announced by their auctioneer, that this lot was to be public, and thereby in-

duced the purchase of other lots, and in pursuance thereof received the purchase money, and gave deeds therefor; that it was a contract with the citizens purchasing, which should be enforced by the Courts.   The Court further charged, that the action of the Council on the report of their committee, was a written admission that this lot was for public use, and that if the complainant afterwards became the owner of lands in the vicinity, he had a right to claim the benefit of the admission and to restrain its sale.

To which several decisions and charges of the Court, defendant excepted.

Poe, Nisbet & Poe, Whittle, for plaintiffs in error.

Hines and C. B. Cole, for defendant in error.

The following points and authorities were submitted for the defendant in error, by C. B. Cole:

1. Lands are dedicated to the public use *by the acts of the owner*, or by *user*.   Where the owner of land has laid out village lots intersected with roads and *public squares*, it has been repeatedly held that such roads and public squares are dedicated to public use.  5 *Taunton's R.* 125.   2 *Vermont R.* 80.   6 *Peters' R.* 431.   8 *Wendell's R.* 85.   11 *Wendell's R.* 486.   4 *Paige's R.* 510.   20 *Wendell's R.* 111.   22 *Wendell's Reps.* 425. 6 *Hill's R.* 407.

2. The use, by the citizens, of a piece of ground for public purposes, for a number of years, *is evidence of a dedication thereof by the owner to the public*, and especially if such use is with the knowledge of the owner.  2 *Strange*, 1004.  1 *Campbell*, 260.   11 *East.* 375.   3 *Bingham*, 447.   *Woolrich on Ways*, 9 to 13.   6 *Wendell*, 656.   8 *Wendell*, 105.   11 *Wendell*, 499. 12 *Wendell*, 172.   4 *Paige*, 513.   3 *Kent's Com.* 451.   16 *Serg. & Rawle*, 390, 392, 396.   4 *N. Hamp.* 11 to 15.   2 *Vermont*, 480.   3 *Vermont*, 524.   8 *Pickering*, 504.   6 *Peters'*, 431.   7 *Barn. & Cres.* 257.   5 *Conn.* 311.

3. This principle is applicable to *rural* as well as *urban* prop-

erty, and watering places, docks, landings, *open* squares, &c. as well as to streets and ways for passage. *4 Paige,* 510. *8 T. R.* 608. 1 *Greenleaf,* 111. 2 *Vert.* 480. 12 *Wheaton,* 582. 6 *Peters',* 431. 20 *Wend.* 111. 22 *Wend.* 425. 6 *Hill R.* 407:

4. The right which the public acquires by dedication is not an interest or profit in the soil of the ground dedicated, but an easement or servitude, subject to which the owner still holds the title and the interest not dedicated, and rests on different principles from an interest or profit in the land of another. 6 *Peters',* 431. 17 *John.* 277. *Coke Litt.* 56, *a.* *Woolrych on Ways,* 14, 15, 51, 52. 3 *Modern R.* 294. 16 *Serg. & Rawle,* 390. 2 *Greenleaf,* 61. 5 *do.* 368. 2 *Vermont,* 480. 3 *Vermont,* 530. 6 *Vermont,* 355. 4 *Paige,* 514. 12 *Wheaton,* 582. 22 *Wendell,* 425. 6 *Hill R.* 407.

5. A *user* of an easement for a period of time sufficient to give title to land by possession, is sufficient to give a title to the easement. 8 *Pickering's R.* 508.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] I think that all doubts about the correctness of the ruling of the Court in this case, may be removed by keeping steadily in view, the distinction between a license and a dedication to public use. It is true, as a general rule, that easements and all incorporeal hereditaments can be conveyed alone by deed. A license or liberty, attached to an estate in lands, therefore, cannot be conveyed to individuals but by deed, with the same formalities which are necessary to convey the freehold. If created by parol, the title remains in the grantor, and the license may be revoked at his pleasure. The rule is a good one, and founded on as sound views of policy as that which requires all contracts concerning lands to be in writing. *A use* of lands, although the fee remain in the grantor, is very often as valuable an interest as the fee itself. There is not in the case of a *license,* the difficulty which is said to exist in case of a *dedication,* to wit, the want of a grantee—some person or authority to receive the fee. The rule is as stated, that a parol licens·

is revocable, but it has some exceptions. If the enjoyment of it must be preceded necessarily by the expenditure of money, and the grantee has made improvements or invested capital in consequence of it, it becomes an agreement for a valuable consideration, and he a purchaser for value. In such cases, the books say that it would be against all conscience to permit the grantor to recall the license as soon as the benefit expected from the expenditure is beginning to be derived. Whilst executory, as a general rule, it is revocable, but not after it is executed. Such is a general view of a parol license or liberty; those who wish to see the title unfolded more at large, will find it profitable to turn to the opinion of this Court in *Sheffield and others vs. Collier,* 3 *Kelly,* 82. What I have said, may suffice for the purpose of drawing the distinction between that and a dedication.

[2.] The doctrine of *dedication* has not, until now, been before this Court for application. It is one of great practical importance, and ought to be understood by all land-proprietors, more particularly by our Municipal authorities. Acting as they do in character of trustees of a domain which belongs to their constituent body, it is indispensable that they understand what creates an irrevocable pledge of any portion of that domain to public uses. It is of vast importance now, when the facilities of intercommunication tempt the proprietors of lands to lay out towns at every railroad depot, and at every steamboat landing, that those who buy, and those who sell town lots, should understand what are their rights, and what their obligations, touching highways, streets, church and school reservations, commons, springs, and public squares. This title of the law has already become in our country an interesting and wide theme. In England, it seems to have had, up to a recent period, but a limited application; here it has attained to very considerable expansion. I confess that with me it was very much an unexplored region of the science. After the argument of this cause *ingenes patebat tellus,* and I found it, if not a continent, at least a broad and fruitful land. I do not, upon this occasion, propose to explore it, except to such extent as the necessities of this case require.

A *dedication*, according to *Senator Furman*, in the *New York Court of Errors*, is, "an act by which the owner of the fee gives to the public an easement in his land." 22 *Wend.* 444. This definition does not convey fully to the mind, the legal import of the word. Where one being the owner of lands consents, either expressly or by his actions, that it may be used by the public for any particular purpose, it is a dedication.

[3.] There is no particular form of making a dedication. It may be done in writing, or by parol; or it may be inferred from his acts, or implied, in certain cases, from long use. A grant is not necessary to create it. And in this consists its main difference from a license to individuals. It is made without a grant, and it exists, although the legal title remains in the maker. The technical objection to a dedication was that it could not exist without a valid grant from the owner of the fee, and inasmuch as the public is incapable of contracting, it could not exist at all. The Courts, however, very early overcame this objection, and held that a deed was not necessary to a dedication. The rule that no grantee is required, grows out of the necessity of the case.

[4.] Dedications of lands for charitable and religious purposes, and for public highways, are valid without any grantee to hold the fee, and the principle upon which they are sustained, sustains dedications of streets, squares and commons. *City of Cincinnati vs. The Lessee of White*, 6 *Peters' R.* 435, 436. *Beatty vs. Kurts*, 2 *Peters' R.* 256. *Town of Paulett vs. Clark*, 9 *Cranch*, 292. *Lade vs. Shepherd*, 2 *Stra.* 2004. 12 *Wheat.* 582.

[5.] When lands are dedicated, and are enjoyed as such, and rights are acquired by individuals in reference to such dedication, the law considers it in the nature of an *estoppel in pais*, which precludes the original owner from revoking it. When a dedication is made of a street in a City, or a public square, or a common, by the proprietor, whether a private individual or City authorities, and property is sold with reference thereto, the purchaser buys with a view to all the advantages which accrue to him from such dedication, and the proprietor is presumed to be compensated for the use he allows to the public, in the enhanc-

ed value of the property which he sells.   It would therefore, be bad faith to the public, and bad faith to individual purchasers in such cases, to permit a revocation of the use.   There is an *estoppel* as by matter *in pais*.   The proprietor is still the owner of the fee and can alien that, or maintain an action for an injury done to the freehold; but the use in the public follows the fee wherever it may go.   These positions apply to streets, highways and all public passages, and also to *Village squares*, and *to urban rights of common or open grounds*.   That commons and squares are subjects of dedication, and under the principles which govern streets and highways, see the great case of *The City of Cincinnati vs. White's Lessees*, 6 *Peters*, 431.   *Watertown vs. Cohen*, 4 *Paige R.* 510.   *State vs. Wilkinson*, 2 *Vermont R.* 480.   *Pearsoll vs. Post*, 20 *Wend.* 111.   22 *Wend.* 425.

[6.] It is clear that the value of city lots is enhanced by the opening of streets and squares and commons, and *that* whether they lie immediately upon or near them or not.   That the owner of lots derives an increased value to his property from such dedications, is so necessary a presumption, that in *Wyman vs. Mayor of New York*, 11 *Wend.* 497, 498, *the Chancellor* held that it could not be denied by parol proof.   When then, the City of Macon, or any other proprietor owning large amounts of real estate, dedicates a portion of it to the public, in the form of open squares, or streets, or commons, it is not at all unreasonable that he or they be held to abide the act.

Indeed, it is perfectly obvious, that if a dedication of streets and squares, in our cities, was liable to be recalled at the will of the original proprietor, the most destructive hindrance would be thrown in the way of their improvement, and the rankest injustice would be visited upon individuals.   Upon slight observation, this doctrine will be discovered to rest in sound policy and essential justice.

I have stated that no particular form or ceremony is necessary to make a dedication.   It may be created by parol and proven by parol.   All that is required (say the *Supreme Court of the United States, in Cincinnati vs. White's Lessees*,) is the assent of the owner of the land, and the fact of its being used for the

public purposes intended by the appropriation." In that case, the facts were, that the original proprietors of the land upon which the City of Cincinnati stands, being the equitable owners, by purchase, before the patent issued, laid out the city. A plan was made of the town, and approved by the proprietors, according to which, the ground lying between Front street and the river was set apart as a common, for the use and benefit of the town forever. Afterward the legal title to this common, or a part of it, came into the hands of the plaintiff in the suit, who had brought ejectment to recover it. The Court held, that the fact of reserving the common in the plan of the town, and selling the lots in pursuance of that plan, was a dedication. The assent in this case was express, and it is an instance of what, in the books, is designated as an *immediate* dedication, to distinguish it from cases where the assent of the proprietors is inferred. This is the leading case in the Union, and the numerous principles settled by it, have been recognized in many of the States. It is referred to in almost every case that has occurred since, as a controlling authority. The principles settled in that case, were also settled—indeed, carried greater lengths—in *Barclay and others vs. Howell's lessees,* by the Supreme Court, (6 *Peters,* 498,) and four years afterwards, most ably reviewed and affirmed, in *New Orleans vs. The United States.* 10 *Peters,* 662. The rule that assent will make a dedication, is not of Cis-Atlantic origin ; it was known to the Common Law. The case of *Lade vs. Shepherd,* 2 *Stra.* 2004, was decided on that ground. In that case the rule was made to apply to the dedication, by a proprietor of a highway over his own lands. The Courts of this country—the *Supreme Court* in *Cincinnati vs. White's Lessees*—have extended it to *City Commons.* In *Jarvis vs. Dean,* 3 *Bing.* 447, *Best, Ch. J.* instructed the Jury upon the trial, that if they believed that the street had been used for years as a public thoroughfare, with the assent of the owner of the soil, they might presume a dedication. The Jury found a verdict in accordance with the instruction, and a new trial was refused.

[7.] It will be noted that the right derived from user does

not depend upon the length of time that the public has been in the enjoyment of the easement. The right is not by force of the possession, nor in consequence of a presumed grant from lapse of time. The use may be of a less time than that from which a grant will be presumed to a franchise. The use, in *Jarvis vs. Dean*, proven, was only four or five years. From use, with the assent of the owner, the law draws a presumption of a dedication. If the rights of the public to the use of streets, or squares, or commons, depended upon possession or use for a time long enough to presume a grant—twenty years in England, and seven years here—it would, in many cases, be of little value; because in all cases where there is not an express dedication, the use might be recalled within that term, and the right be defeated. The *Supreme Court*, on this head say: " The right of the public, in such cases, does not depend upon twenty years' possession. Such a doctrine applied to public highways and the streets of the numerous villages and cities that are so rapidly springing up in every part of our country, would be destructive of public convenience and private right." In *Pearsol vs. Post*, tried before the *Supreme Court of New York*, and carried thence to the *Court of Errors*, in an opinion illustrative of the respectable ability and indomitable industry of Mr. Justice *Cowen*, he says: " It will be seen by several of the English and American decisions cited, that the mere oral declarations and acts of the owner, will warrant the presumption of a dedication, though they have been followed by public enjoyment but a very short time, and much less than twenty years." 20 *Wend*. 121. This presumption, from use, however, ought, in my judgment, to be carefully guarded, for it is easily susceptible of abuse. The qualification which the Supreme Court puts upon the doctrine, seems to me to be so important as to merit the force and effect of a rule. The qualification is this, that such use ought to be for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment.

Chancellor *Kent*, canvassing this doctrine, says : " The true principles on the subject, to be deduced from the authorities, I apprehend to be, that if there be no other evidence of a grant or

dedication than the presumption arising from the fact of acqui-escence on the part of the owner, in the free use and enjoy-ment of the way as a public road, the period of twenty years, applicable to incorporeal rights, would be required, as being the usual and analogous period of limitation; but if there were clear, unequivocal and decisive acts of the owner, amounting to an explicit manifestation of his will, to make a permanent abandonment of the road, those acts would be sufficient to es-tablish the dedication within any intermediate period." 3 *Kent*, 451. 6 *Peters*, 438. Nor is the mere failure of a city corporation to dispose of, or to incorporate into the plan of the city, a portion of its landed property, although it may be used more or less, by the public, as a common, to be mistaken for a dedication, any more than the unenclosed lands of an individual, permitted to be used as a common, by the neighborhood, are to be considered as dedicated.

In support of these general views, the following authorities are referred to, some of which have been already cited. *Hammond's Law of Ni Si Prius*, 193, *edition of* 1823. *Lade vs. Shepherd*, 2 *Stra.* 2004. *Rex vs. Loyd*, 1 *Camp.* 260. *Rugby Charity vs. Meriwether*, 11 *East.* 375. *Jervis vs. Dean*, 3 *Bing.* 447. *Rex vs. Burr*, 4 *Camp.* 16. *Woodyer vs. Hadden*, 5 *Taunt.* 125. *The State vs. Wilkinson*, 2 *Vermont*, 480. *Cincinnati vs. White's lessees*, 6 *Peters*, 431. *Livingston vs. The Mayor of New York*, 8 *Wend.* 85. *Wyman vs. The Mayor, &c. of New York*, 11 *Wend.* 486. *The Trustees of Watertown vs. Cowen*, 4 *Paige*, 510. *Post vs. Pearsoll*, 22 *Wend.* 431. *Pearsoll vs. Post*, 20 *Wend.* 111. 7 *Vermont R.* 241. 17 *Serg. and Rawl*, 88. 3 *Vermont*, 521. *Ibid*, 530. 12 *Wheat.* 582. 2 *Peters*, 256. 9 *Cranch*, 292. 3 *Vermont R.* 521. 6 *Idem*, 355. 18 *Louis. R.* 286.

Without entering more minutely into the doctrine under re-view, the following propositions may, I think, be considered as established upon authority. That an urban square or common is the subject of dedication.

That a grant is not necessary to create a public use, nor is it necessary that it be evidenced in writing, but that it may be created by parol and proven by parol. That the assent of the

owner of lands, with public use, for a term short of the time from which a grant will be presumed, will warrant a presumption of dedication and uphold the use. Not even all of these are necessary to this case. This is not a case where the dedication is to be set up by implication. It is not necessary in this case, to rely upon the rule of *user ;* for both the bill and the proofs make a case of immediate, that is, of express dedication. The bill is very meager. The complainant avers that he is the proprietor of a valuable residence in the City of Macon, near the alleged reserve; that he bought of one H. G. Lamar, and before buying, being desirous of knowing the condition of this reserve, he made inquiry, and was told by those owning property around it, that when their lots were sold by the City of Macon, the auctioneer employed by the Council was instructed to pledge the City, that the reserved lots should not be sold, but be held as a reserve. Had the complainant stopped here, his bill would have been demurrable, and would have been dismissed upon the defendant's motion; for the plain reason, that what he charges, if true, created no obligation upon the City of Macon, and clothed him with no rights. That is to say, it may be true that he made the inquiries, and was told by the property-owners in the neighborhood of the reserve, that the auctioneer was instructed to pledge the City that it should not be sold, but be kept as a reserve, and yet there be no dedication. The City of Macon cannot be held to any obligation, upon proof of what certain citizens had told the complainant. Had he gone no farther, he would have been limited in his proof to the allegations before recited. In these allegations, there is no averment that the City of Macon had dedicated this land to public use; nor is there any averment of equivalent import. Although the Courts have gone a great way on this matter of dedication, they have not gone the length of saying that a public use can be set up upon neighborhood repute. But the complainant proceeds to charge, that in May, 1846, one Treat Hines petitioned the Mayor and Council for leave to purchase the reserved lot, as a part of the public reserve belonging to the City, and that one James Goddard presented his counter-petition, setting forth the

facts before referred to, to wit, that the auctioneer at the sale, was instructed to pledge the City that it should not be sold, but held as a public reserve; that the matter was referred to a committee, who, after examining the testimony, reported that the Council had bound themselves not to sell the lots reserved, and they saw no reason why said promise should be violated; that this report was accepted and entered upon the Minutes of the Council, by a vote of a majority of the members. To the bill is appended a certified copy of 'the proceedings of the Council, in relation to the report of this committee, which thereby became a part of the complainant's bill. This certified copy contains the report of the committee, in which they say, "The committee to whom was referred the petition of Treat Hines, to lease the vacant ground in front of lots Nos. 7 and 8, in square 86, for a term of years, report adverse to granting said petition—your committee being fully satisfied, by certificates accompanying the petition of James Goddard, going to show that at the time of the sale of said lots, the Council instructed the auctioneer to sell the lots under the pledge that the ground now applied for, should be kept open as a public reserve; and we see no reason why the pledge of the Council should be violated, and we recommend that this report be entered upon the Minutes of Council." It also contains the action of the Council, adopting it by a vote of four to one. The bill avers farther, that the City of Macon is the owner of this property, and was the owner originally of the lots belonging to the complainant, and all others contiguous to it, in whom the right of disposition was vested by the 'Legislature of the State of Georgia; and that the Mayor and Council, in violation of their pledge, had ordered the sale of the alleged reserve, and that it was advertised to be sold on a day stated. It avers that complainant's property is contiguous to the reserve, and that the sale and improvement of it will be an injury to him, and lessen the value of his property. The prayer is for a perpetual injunction. Now, although these last stated averments do not in form amount to a charge of dedication, yet we think, taken together with the exhibits, they do amount in substance to it. If the

facts stated in the bill, amount in law to a dedication, it is sufficient without a charge that there was a dedication, *eo nomine*. The bill, in setting forth the petition of Treat Hines and the counter-memorial of Goddard, which counter-memorial claimed that the land in question was set apart *as a public reserve by the City of Macon, at the time of the sale of the other lots contiguous to it ;* and in setting forth the report of a Committee of the Council affirming that fact, and the adoption of that report, does in *legal effect*, charge that at the sale, the City of Macon did set apart the land as a public reserve. Such is our judgment of the matter : albeit, I do not arrive at it, without some *straining*. But that these averments do charge a dedication, *at the time when the Council adopted the report* of their committee, there is no sort of doubt ; and it will be seen that if *then* dedicated, the complainant is as well entitled to his injunction, as he would be if it had been done at the time of the sale. If then, we are right in those principles of law, which we have said govern dedications to public uses ; if this open lot or urban reserve, is the subject of dedication, and if no grant or other writing is necessary to make it, then the plaintiff has made a good case, and the defendants can take nothing by their motion to dismiss. The grounds taken in the motion are,

1. Because the bill makes no proper case for the injunction sought.

2. Because the contract set up in said bill, was not in writing, and therefore void.

3. Because, by his own shewing, the complainant is not entitled to the relief sought. The second of these is denied, as I have labored to show, by an irresistible weight of authority. This settled, the other two grounds, (being in fact but one) amount to nothing. Upon the case made, the plaintiff is entitled to relief, and to relief by injunction. The argument assumed that the bill and also the proof, made a case of dedication to King and other individuals, who at the sale bought property contiguous to the vacant lot. From this assumption sprang (as it seems to me,) all the erroneous conclusions to which the learned counsel came. If this were true, then I concede that

it would be, in my opinion, impossible to sustain this bill, for many reasons, but chief among them, because the complainant was not, nor were those under whom he claims, parties to the contract. If this were true, it was a private license generally, as we have seen, created by grant; if not generally, revocable, and under which certainly no body takes a benefit, but those to whom it is made and their privies. But such is not the case made by this bill. The bill charges the reservation to have been for the *public* use; it calls it a *public* reserve. It charges a pledge on the part of the City, that it should be forever kept open as a public reserve. It no where claims it to have been reserved for any individual use. Such being the case, the complainant is entitled to relief, and his remedy is that selected by injunction; not upon the score of special damage, but because being a resident and property-owner in the City of Macon, he is one of that public, who are the beneficiaries of the dedication. Any other citizen is as much entitled to sustain a bill as he. He set shimself forth as a resident and owner of property in the city, and on his own account, and in behalf of all others, who may come in and join in the costs of the litigation, he claims relief. It is true that he avers a special injury to himself if this reserve is sold, but that does not make it a case of private license—averring as he does, at the same time, that it was pledged to be held as a *public* reserve. Now, the City of Macon being owner of the soil, can maintain an action, for an injury done to the freehold of all her public reservation, her streets, allies, and open squares or plats, this included. So obstructions to the use, by third persons, can be punished by indictment and conviction on the criminal side of the Court. But here, the City, the original proprietor, is seeking to recall her dedication, by an appropriation of the use of this lot, and she is proceeding to do so by a sale ordered and advertised. By her dedication, *she is estopped from doing so.* The estoppel enures to the benefit of all who belong to the public of the City of Macon. If Dr. Franklin, and all others with notice of this sale, should lie by, until third persons became interested as purchasers without notice of the dedication, for value, it might be a very serious

question, whether the rights of the public would not be lost forever.

Nor is it necessary that he should have become the purchaser before or at the time when the dedication is made. When made, it is for the benefit of all *who are* or *may become citizens*. It is an appropriation for public use forever, and all who at any time become members of that public, are its beneficiaries, and have rights in the use, which the law will protect. As to damage, the law presumes damage, when a right of this sort is violated in this way. A private licence will be enforced in Equity by injunction. 3 *Paige,* 254. 3 *Kent,* 452. 2 *Munf. R.* 488. 4 *Sandf. Ch. R.* 502. If a license in an individual, why not a use in the public? The principle is the same in either case.

In *Barclay et al vs. Howell's Lessees,* the Supreme Court hold that if there is a dedication by an original proprietor in favor of a City, and the authorities of the City have appropriated it to a different purpose, Equity may compel the specific execution of the trust, by restraining the corporation, or by removing the obstructions. 6 *Peters,* 507. If in that case, much more will Equity interfere if the *proprietor,* as in this case, seeks to revoke the dedication, by selling the property.

[8.] Exception is taken to the admission of proof of the sayings of the auctioneer, who sold the City lots at the time when the reservation was made. It was proven on the trial, that the sale was public, and was conducted by Mr. Higgins, the Mayor of the City and several of the members of the Council being present, and that when one of the lots adjoining the reservation was offered, it was proclaimed by Mr. Higgins, that the piece of land in question was reserved as a common forever; and that this declaration was confirmed by the Mayor and the members of the Council then present. The witness, Mr. King, also testifies that the reservation thus made, was his inducement for buying, and without it he would not have made a bid. The auctioneer and the committee of the Council, were the agents of the corporation, for conducting the sale. The dedication was *then* made, and it was made as part and parcel of the sale. The reservation was one of the terms of the sale. The acts and sayings

af an agent, done and uttered within the scope of his agency, and at the time when it is executed *dum fervet opus*, bind his pricipal. The rule applies to corporations as well as to individuals. The City of Macon held forth to the world the auctioneer and the committee, as agents to conduct this sale, and if in effecting it, they made a dedication of this ground, the City is bound by it. Proof of their *acts*, of course, is admissible, and proof of their sayings at the time, is also admissible, as *verbal acts*, as a part of the *res gestæ*. *Greenleaf's Evid.* §113. *Story on Agency*, §§§134, 5, 6, *and* 7. The identical point was made in *Barclay et al. vs. Howell's Lessees*. The declaration of the surveyor, acting as agent of the proprietors, made at the time when the City of Pittsburg was laid out, that a certain street to low water-mark, "should be for the use of the citizens forever," · was held proveable, by the Supreme Court, to set up a dedication of that street. 6 *Peters*, 501, 502.

[9.] The competency of Mr. King was excepted to. A parol dedication, we have seen, is sustained by the law. Parol proof of it was therefore competent. He was called to prove the dedication at the sale. I do not see upon what ground he is to be held incompetent. He was a purchaser of the adjoining lot, and sold to Mr. Goddard. He says he thinks he gave a quit claim title to his vendee. If he gave a wrrantee title, I cannot see that he is interested in any degree. He did not warrant the dedication. Whether there was or was not a dedication, does not affect his liability. He certainly can neither gain or loose by the event of this suit.

[10.] The map of the City was properly admitted. It is true, that it proves but little; but under the circumstances, it went to show a recognition of the fact, that this ground was a reserve. Mr. Rose testified that he made it on his own account, and that it was kept by the Council in their chamber. This reserve was originally marked as other lots, and on this map, made after the sale, it was delineated as open ground.

[11.] The deed from the City to Mr. King, was legally admitted, to show assent on the part of the City authorities to the terms of the sale to him. He bought upon a declaration made

by the auctioneer, and assented to by a committee of the Council then present, that the adjoining lot, which is the land claimed to have been dedicated, was to be held as a public reserve. It is to be presumed that the Council, when they made the deed, had knowledge of this declaration having been made, because a committee of their body was present and assented to it. With such knowledge, they, in closing the contract with Mr. King, are to be considered as affirming that declaration, and thereby the dedication which it created. The deed singly would prove nothing, but in connection with the other facts and circumstances, was admissible for what it was worth.

It is claimed in the assignment, that the Court erred in charging the Jury, ".that if the City received the price bid for said lot, (the lot bought by Mr. King,) and made him a deed, this ratified the sayings of the auctioneer, and dedicated said reserved ground to the public." This assignment does not truly represent the Court. What the Judge charged was, " that if at the time of the sale of the lots adjacent to those in question, the Mayor and a portion of the City Council, while engaged in the sale, in order to enhance the price of the other lots, caused proclamation to be made to the bidders that these lots were not to be sold, but were to be kept open as a perpetual reserve or common, and the lots were sold in that neighborhood, with this understanding on the part of the bidders, and if the Mayor and Council then went on to complete the sales by the execution of deeds and the reception of the purchase money, and forbore to sell the lots in dispute, but permitted them to remain open and unoccupied, except as a common; these facts are, in the opinion of the Court, a dedication to public use. The assignment represents the Court as holding, that if the City received the price of Mr. King's lot, and gave him a deed, that thereby, they ratified the sayings of the auctioneer, and that by this ratification they made the declaration; when in truth, the charge was, that *if* the Mayor and a portion of the Council, at the sale, and while engaged in it, in order to enhance the price of lots, caused proclamation to be made that the reserved lots were not to be sold, but were to be kept open as a perpetual reserve; and *if* they were

sold with that understanding; and *if* they then went on to complete the sale by reception of the purchase money and by making a deed ; and *if* they did forbear to sell the reserved lots, but kept them open as a reserve or common—then, 'all these things *would amount to a dedication.* If these things were true, the City being, as we hold they are, bound by the acts and sayings of their agents at the sale, there was clearly a dedication. Without more on this exception, I refer to what I have already said relative to the manner in which a dedication may be made.

[12.] The only remaining matters to be noticed, are the admission in evidence of the report of the committee of the Council, on Treat Hines' petition, and the action of the City Council thereon, and the charge of the Court as to the effect of that action. There are two views of the action of the Council, upon either of which these papers were admissible. It was the most solemn form in which they could ratify the dedication made by their agents. Their committee reported, that from the evidence presented to them, this ground had been pledged at the sale to be kept as a public reserve. The Council considered of this report, and passed an order which was entered upon their minutes adopting it. By what more deliberate and authoritative act, could this body have affirmed the reservation made at the sale ? They not only affirmed it, but furnished the highest evidence of the affirmation. This ratification related back to the time of the sale. Being affirmed, the dedication took effect from the time when it was made. This is the general rule as to ratification by a principal of the acts of an agent. *Story on Agency,* §§§242, '3, '4. A similar ratification of an act of dedication was held to relate back to the time when it was made, by the *Supreme Court,* in *Barclay et al. vs. Howell's Lessees,* 6 *Peters,* 503.

The ratification then, was in law, a dedication, at the time when the agents of the Council made the reservation. To this effect the Court instructed the Jury. If it was, it was competent to prove it, by a certified extract from their minutes. Again, beyond all question, the proceedings of the Council, on the petition of Hines, was a solemn dedication of this ground, *at*

*the time when they were had*, in the year 1846.    *That* is sufficient for this case.    Dr. Franklin bought subsequently to that time. But if he had not, his rights would have been the same, for as before stated, when a dedication is made, it enures to the benefit of all who are, or may afterwards become citizens of the City. Upon this view of it—indeed, upon all views of this question— the evidence was properly admitted, and the charge of the Court as to its effect, was right.

Let the judgment be affirmed.