### CITY OF La FAYETTE *et al. v.* WALKER COUNTY *et al.*; *et vice versa.*

The dedication of land to public use and the acceptance of such dedication may be implied. Intention to dedicate may be inferred from acquiescence by the owner in the use of his land by the public, if the use be of such character as to clearly indicate that the public accepted the dedication to the public use.

It is not essential to constitute a valid dedication to the public that the right of use should be vested in a corporate body. If there be a dedication of land to public use prior to the existence of a municipal corporation, then, upon such corporation being organized, including such land within its limits, the use of the land in trust for the public at once vests in it.

Applying the foregoing legal principles to the allegations of the petition, it was not subject to general demurrer.

The demurrer on the ground of misjoinder of parties plaintiff was abandoned.

In view of the allegations of the petition the county commissioners of the county could, in their representative capacity, be joined as codefendants with the county in the action against it.

The other ground of special demurrer set forth in the statement of facts preceding the opinion was not meritorious.

The evidence submitted on the trial by the plaintiffs tended to support the case laid in the petition, and the grant of a nonsuit was error.

Nos. 2287, 2289. August 11, 1921.

Equitable petition. Before Judge Wright. Walker superior court. August 17, 1920.

This case was brought by the City of La Fayette, N. E. Foster, C. L. McCall, and M. S. Jackson against the County of Walker and its Board of Commissioners of Roads and Revenues, and J. N. Tate and S. F. Evans. The substance of the material parts of the petition is to the following effect: About the year 1835 a village existed in the territory now within the corporate limits of the City of La Fayette, Walker county. This village was laid out by the residents of the community into lots or blocks, and a common or

public square was left vacant near its center, which was entered on the north by a street or highway approximately sixty feet wide, and extending south through such square, and two highways entered the square from the east and two from the west. " Said public square was a part and parcel of the highways of said village. That a number of stores, residences, and hotels were constructed, abutting said square and said highway, and that said public square was a reserve for public uses and a common place for the inhabitants of said village and the public generally to use for all public purposes." In 1835 the village was incorporated by the legislature as the Town of Chattooga and made the county site of Walker County. In 1836 the name of the town was changed by the legislature to La Fayette, and in 1903 the legislature made the town of La Fayette a city. About 1839, in accordance with an agreement between the municipal authorities of the then Town of La Fayette and the properly constituted authorities of Walker County, the county, by the permission of the municipality, erected a court-house on the public square, to be used solely as a court-house for the benefit of the inhabitants of the town, the county, and the general public. " There never were any writings between said city and said county, and between said county and any person, as to the title or the right of possession of Walker County to the land or rights of occupancy thereof by said county." The building was so used until February 1883, when it was burned, together with all the public records and books. During the same year the county erected a new court-house on the site of the old one, except that the new building included about twenty feet more on the east, and twenty feet more on the west side than the old building, which new building was used exclusively as a court-house until 1917, when the building became dilapidated, unsanitary, and inadequate for the growth of the public business. The county then constructed a new court-house on a site outside the public square and some three or four hundred feet east of it, all of the books, records, furniture, and property of every description of the county therein being removed from the old building into the new one. Since that time the county has not used the old building or the grounds upon which it is situated for any public purpose. The square, since the settlement of the community, has ever been used by the general public for the purposes to which public squares and parks are ordinarily devoted.

In 1916 the county through its legally constituted authority undertook to contract with the City of La Fayette for the sale to the city of whatever rights the county had as to the building and the public square, and executed a bond to convey the same to the city upon payment of the purchase-money. But as the purchase was to be on credit and a debt of the city to be incurred without an election for the purpose of obtaining the necessary vote of the citizens of the municipality to incur the debt, the proposed sale was abandoned. "In June, 1917, [the named county commissioners] took a deed of whatever rights, title, and interest that the makers therein had, from J. P. Shattuck, W. O. Davenport, J. E. Patton, and W. E. Withers, for said old court-house building and for a certain part of said public square [describing it], which included the old court-house building, and a strip of land on the east and west sides of same, twelve feet outside of the building, and also some seventy-five feet on the south end of said old building, all of which was then and is now a public common or square and used by the public in traveling and for public gatherings and for other public purposes. Said deed being only a quitclaim title, petitioners charge and allege that the act of said defendants was void as an act ultra vires. That said commissioners at said time of taking said deed in the name of Walker County knew that said court-house building was ready to be abandoned, and that the same was inadequate for county purposes, and that the said county had no public uses therefor; and they exceeded their authority in making said transaction, although they took the deed in the name of Walker County." After the abandonment by the county of the public use of the old court-house and grounds described in this deed, the five defendant county commissioners began the conversion of the old court-house and grounds into private use by letting the same to various tenants for the following uses: a cabinet shop, "gitney-bus" station, an express office, shoeshop, a vulcanizing establishment, and one part as living quarters for a family. They have encroached on the north side of the public square by building a platform some eight feet wide by twenty feet long, and on the south side a platform of the same width by fifty feet long, "thereby impeding the free use to the citizens of said city and to the public in general of the public square as used for public purposes." It is alleged that the old dilapidated and

unsanitary court-house and the private uses for which it has been let by the commissioners, and encroachments made on the public square by them which obstruct the public highways or streets of the city, constitute a public nuisance. On the north, east, and west sides of the square, and facing it, are substantial business houses used for many named important businesses, and the square is used by the citizens conducting such businesses, and by their patrons, and the general public; and should the public square and old court-house be converted to private uses, or sold for private uses, petitioners would be irreparably damaged thereby.

The commissioners advertised the property for sale, sealed bids to be received on April 15, 1920. On April 14, the city filed with its recorder and the mayor and council an application to remove the old court-house building, and cited the county and the other defendants " to a trial thereon, which has not yet been held." On April 15, the city, before any bids were received and opened, notified prospective bidders and the commissioners of the proceeding the city had instituted for the removal of the old court-house. Notwithstanding such notice the defendants J. M. Tate and S. F. Evans bid for the property, submitting the highest bid, and deposited a certified check in accordance with the requirement of the commissioners. The purpose of such bidders is to obtain the property and convert it to private uses, thus denying its free and public use to the citizens of the city, the county, and the general public, which private use would result to the great and irreparable injury and damage to the city, its inhabitants, and the general public. And moreover, such private use of the premises would be " contrary to the grant of the authority to erect said building and the purposes for which the same was to be used." " Petitioners N. E. Foster, C. L. McCall, and M. S. Jackson " are residents and taxpayers of the City of La Fayette, " owning property adjoining and abutting said public square, that has been acquired for a valuable consideration prior to the abandonment of said court-house for public uses, and that they acquired their rights in the purchasing of said property with the understanding and belief that said public square would at all times be put to nothing else except public use, and that the old court-house building should be used for no other purpose than for public use; and should a sale be made by the county to individuals to be used for private

purposes, denying the free use of said public square to the public for public uses, that it would injure and damage each of said petitioners in the diminishing of the value of their property, and in the destruction of the business in which they are engaged, and that the damages would be irreparable."

The prayers were to the effect that the defendants be enjoined from effectuating the proposed trade to convey the premises in question to Tate and Evans; that it be decreed that Walker County has no title to the property in question, and that title to the same be adjudged to be in the City of La Fayette in trust for public uses; that should it be decided that the materials in the old court-house building belong to Walker County, then the county and its commissioners be required to move such material "from said public square and from the highways of said city within a reasonable time to be fixed by the court;" that the county and its named five commissioners be enjoined from using any of the old building or the ground around the same for the private uses above referred to, or from renting or leasing any of the premises to others to be devoted to such private uses; and for general relief, etc.

All of the defendants demurred generally and specially to the petition, the grounds of special demurrer being, (1) misjoinder of parties plaintiff, (2) misjoinder of parties defendant, and (3) "that it is not alleged in the petition that the City of La Fayette or any municipal corporation of which it is the successor ever owned or was in possession of or had the right of possession of the property alleged to have been dedicated for the use specified in said petition; that it is not alleged anywhere in the petition how, or in what way, or at what time said alleged dedication was made, or that there was ever to be a reversion of said property, or, if there was to be such reversion, how or under what circumstances or to what person or corporation the same was to revert." The demurrer was overruled, and the defendants excepted pendente lite. They also answered. The trial resulted in a nonsuit, to which plaintiffs excepted; and the defendants filed a cross-bill assigning error upon their exceptions pendente lite.

*Glenn & Napier* and *Henry & Jackson,* for plaintiffs.

*Maddox & Doyal, Shattuck & Shattuck,* and *Rosser & Shaw,* for defendants.

FISH, C. J. (After stating the foregoing facts.) The court properly overruled the general demurrer to the petition. Both the dedication of land to public use and the acceptance of such dedication may be implied. Intention to dedicate may be inferred from acquiescence by the owner in the use of his land by the public, if the use be of such character as to clearly indicate that the public accepted the dedication to the public use. *Healey* v. *Atlanta*, 125 *Ga.* 736 (54 S. E. 749) ; *Chapman* v. *Floyd*, 68 *Ga.* 455; *Brown* v. *Gunn*, 75 *Ga.* 443. Under section 4171 of the Civil Code, if the owner of land by his acts dedicates it to public use, and it is so used for such length of time that the public accommodation might be materially affected by the interruption of the enjoyment, he can not afterwards appropriate it to private purposes. And if he can not, it of course follows that his privies can not.

A public square or a common in a town or city is the subject of dedication, and a dedication of land to a municipality to public use inures to the benefit of all who at the time are or may afterwards become citizens of the corporation. *Mayor etc. of Macon* v. *Franklin*, 12 *Ga.* 239. The petition alleges, in effect, that the area of land in question was laid off prior to the year 1835, as a public square in a village, or settlement, which in that year was incorporated as the Town of Chattooga, and which subsequently became the Town of La Fayette, and afterwards the City of La Fayette; that the square was used by the people of the community prior to the formation of the municipal corporation, and by the people of the latter, and by the public generally for such public uses to which public squares and parks are usually devoted. This state of affairs continued until 1839, when, in accordance with a parol agreement between the proper officials of the Town of La Fayette and those of the County of Walker, the county was permitted to build a court-house on the public square. The portion of the square not covered by the court-house has continuously since then been used by the general public as a public square, and the court-house was used for the public business until it was burned in 1883; and a new court-house erected in that year was so used until 1917, when the county built a new one on another lot in the city, and abandoned the old building for public use, and let the same for private uses. The petition alleges, in effect, that the county never acquired any rights in and to the public park by any writng from the city, or

from any person. These allegations are sufficient to authorize an implied dedication by the owner of the area of land in question to the village, town, and city to use as a public square, and an acceptance by them of such dedication; and as the county, according to the petition, obtained all of its rights to the public square by reason of the permission of the Town of La Fayette, the county is not in a position to gainsay such implied dedication and acceptance. Taking the allegations of the petition to be true, they are sufficient to authorize an injunction against the county, its commissioners, and the other defendants, restraining them from using the public square, including that portion of it upon which the old court-house is situated, and the court-house itself, for any purpose, as the county has abandoned the right it had to the property for public uses.

2. The special demurrer on the ground of misjoinder of parties plaintiff is not referred to in the brief of counsel for the plaintiffs in error, and must be considered as abandoned.

3. There is no merit in the demurrer on the ground of misjoinder of parties defendant. The contention for the county is that the suit is not only against the County of Walker, but against the named county commissioners as individuals. The action is not against them as individuals, but as commissioners representing the county. It is true that a suit against a county must be in the name of the county, and service may be perfected upon a majority of its commissioners. Here it is proper; for the commissioners, who, in their capacity as representatives of the county, are doing or threatening to do the acts sought to be enjoined. It is not a suit against the commissioners alone, but really designed as one against the county, as was the case in *Arnett* v. *Commissioners,* 75 *Ga.* 782, and *Glaze* v. *Bogle,* 105 *Ga.* 295 (31 S. E. 169), cited by counsel for the county.

4. In view of what we have said in the first division of this opinion, the petition was not subject to the other special ground of demurrer fully set forth in the statement of facts.

There was evidence submitted by the plaintiffs, tending to establish their case substantially as laid; and the trial court erred in granting a nonsuit. It is true, as stated in the brief of counsel for the county and its codefendants, that the city failed to show " that the principal highway or street ' entered said square on its north-

ern boundary and continued through the center of said square, leaving said square at its southern boundary near its center,' " " and that the property designated as the public square was a part and parcel of the highways of the village;" and that the city also failed to prove that " by and with the consent of the municipal authorities of the City of La Fayette, then the Town of La Fayette, the municipal authorities agreed with the properly constituted authorities of Walker County to permit Walker County to erect a court-house building to be used for public purposes only on the public square of said corporation." The lack of proof to sustain the allegations of the petition in respect to these matters, in view of the other averments therein, did not authorize the grant of a nonsuit. The main contention of the plaintiffs, as set forth in the petition, is that the area of land in the city designated as the " public square " is really a public square, and that the city is entitled to possess and control it for public use, and that the county by building a new court-house not on the square, which it now occupies, and thus ceasing to use the public square for public use, has abandoned and forfeited any right it ever had in the premises for such use. It is not essential to the maintenance of the city's contention for it to prove that the " public square " is traversed by highways, and that it is therefore a part of the city's highways or streets. The main thing to be shown, in view of the petition as a whole, is that the city has a right as against the county to the use of the " public square " for public use, whether or not it be traversed by highways.

There was evidence to the effect that in 1837, before a court-house was erected on the square in question, it was, in size and shape, the same as it now exists, bounded on its four sides with public streets some thirty or forty feet wide; that these were then business streets of the town, which had some seven or eight hundred white inhabitants; that on these streets facing the square were many buildings, most of them used for businesses of various kinds; that these buildings then appeared to be some fifteen or twenty years old; that there were then locust trees seven or eight inches in diameter growing in the square; and that it was used as a public square by the general public just as it has been continually used since that time, with the exception of that part of it upon which the court-houses have been built. This evidence tended to

show that, years prior to incorporation of the village, there had been an implied dedication of the square by its owner to the village and town for public uses, and an acceptance of such dedication by the village, indicated by the laying out of its streets along the sides of the square, the erection of business houses on such streets fronting the square, and by user on the part of the public. 13 Cyc. 465, notes 55, 56, 57. It is not essential to constitute a valid dedication to the public that the right of use should be vested in a corporate body. The public, it has been said, is an ever-existing grantee capable of taking dedications for public uses, and its interests are a sufficient consideration to support them. And it has been held, if there is a common-law dedication of land to public use prior to the existence of a municipal corporation, then, upon such corporation being organized and including such land within its limits, the use of the land in trust for the public at once vests in it. 13 Cyc. 439, notes 13, 14, and 15. There was evidence tending to show that the square had been continuously used by the inhabitants of the village and town and by the general public for such a length of time, prior to the erection of the first court-house by the county, that the public accommodation would have been materially and adversely affected had the enjoyment of such use been interrupted by the owner of the land appropriating it to other and inconsistent purposes. If the owner could not interfere with the right of the city and the general public to use the square for public purposes, then the owner could not convey the land to any one else, if the grantee had notice, who could deprive the city or the public of its rights under the dedication. As the county, when it erected the first court-house on the square, was in the circumstances bound to know of the rights of the city and the public in general to use the square for public purposes, the county then necessarily had to take from the city whatever rights the county had to use the square, since there was no other source from which it could procure the right to erect a court-house on the square. Thus it is apparent that it was not essential to the plaintiffs' case to prove the allegation of the petition that the county by agreement with the city was permitted to use the square for a court-house site.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*