THE COAST LINE RAILROAD COMPANY, plaintiff in error, *vs.* OCTAVUS COHEN *et al.*, defendants in error.

1. A Court of equity will not entertain a bill in the name of one or more private citizens to restrain the obstruction of a public street, no private injury or threatened injury being alleged to such citizens or to their property. In such a case, the nuisance being purely a public one, can only be restrained by the public, on information filed by a public officer, to-wit: by the Solicitor General for the Circuit.
2. Nor is it sufficient that one of the parties is a lot owner on the street, no specific injury to said property being alleged, but only a general allegation that damage will result to said lot.
3. A railroad company was chartered, with the privilege of running its road from such point within the limits of the city of Savannah as the Mayor and Council of the city should designate, and from thence to the sea coast, by certain cemeteries outside of the city, but used by the citizens for the burial of their dead. The Mayor and Council fixed the initial point considerably within the city, and passed an ordinance permitting the company to lay down its track from such initial point through certain streets and squares on the route from such point by said cemeteries in the direction prescribed by the charter, and to run horse cars thereupon:
*Held,* That such permission was within the authority of the Mayor and Council over the streets and squares of the city, and under its charter the company might, with such authority, so use the streets, not obstructing them permanently by excavations or embankments, and leaving them conveniently passable, except by the passage of the cars. Under such limitations no public nuisance will be created, and no grounds for an injunction by the public exist.

Injunction. Nuisance. Municipal corporation. Before Judge HANSELL. Chatham county. At Chambers. November 5th, 1873.

Octavus Cohen, W. H. Tison, Henry Brigham, Joseph S. Claghorn, William Remshart, James W. Lathrop, George W.

Wylly, John D. Hopkins and W. W. Remshart, filed their bill against the Coast Line Railroad Company, containing, substantially, the following allegations:

That they are citizens and residents of the city of Savannah, and owners of real estate and other property within the limits of said city, and that, as citizens of said city and State, they are entitled to the free and unobstructed use and enjoyment of the public streets and squares of said city, except where they had legally parted with, or been lawfully divested of said rights; that the good health and sanitary condition of the city, and of themselves and families, depended on its thorough drainage and sewerage, and keeping the public drains in order; that public sewers had been constructed along Broughton and Bolton streets, and the draining of said sewers is essential to the health of the citizens.

That the Legislature of the State of Georgia, by an Act approved October 10th, 1868, incorporated the Wilmington Railroad Company, with authority to construct a railroad from such point in the city as may be authorized by the Mayor and Aldermen, to any point or points on Wilmington Island, said Act giving no authority whatever to said company to pass through or over any street or square; that the General Assembly, by an Act approved August 26th, 1872, changed the name of said Wilmington Railroad Company to the Coast Line Railroad Company. That the General Assembly, by an Act, approved December 21st, 1866, authorized the Mayor and Aldermen, in their corporate and public capacity, to construct and operate carriage railways in any of the streets of said city, upon certain conditions; and among others, that they should not, in any manner, interfere with the free passage of vehicles, horsemen and footmen, and that no such railway should ever be built or laid on any street which runs through a square or a park, and that upon said conditions said city could let or farm said privilege; that from time immemorial the public squares have been used by the citizens, their families and children, as places of recreation, and that the passage of horse-cars will not only injure their beauty, and

The Coast Line Railroad Company *vs.* Cohen *et al.*

produce noise and dust, but injure them as places of safe and pleasant recreation, and will defeat the ends for which they were set apart; that the use of said squares by horse-cars is an invasion of their rights unauthorized by law.

That the present Mayor and Aldermen, by an ordinance passed September 29th, 1873, at the request of the said defendant, designated the intersection of West Broad and Broughton streets as an initial point, from which said defendant might commence a line of road, running thence east along Broughton street to Habersham, thence south through Habersham to Bolton street; that said ordinance does not give any express authority to said defendant to use said streets or squares, but it is a mere license, leaving the risk and responsibility upon it to rest upon such rights as it might have derived from the General Assembly.

That the defendant was proceeding, without authority of law, to lay a track to be used by horse-cars from West Broad street through Broughton street, east to Habersham street, thence through Habersham street, and through the public squares, intersecting said Habersham street, south to Bolton street, and thence east through Bolton street; that Wilmington Island is east of said city, and that an initial point could be designated in the extreme eastern portion of said city, whence said road could, by a more direct route, without passing through any of said streets or squares, reach its destination.

That Habersham street runs through several squares, and Bolton street through Forsyth Park; that large public sewers are laid in both Broughton and Bolton streets, and that the construction and use of a railway over them would interfere with access to and repair of the sewers. That Broughton street was one of the most important in the city; that the defendant had torn up and obstructed the same and was still engaged in tearing up and obstructing the same, for the purpose of laying said track, and that it seriously interfered with the free passage along and across said street.

That said City Council had not attempted to use said streets, or to lay tracks thereon in their public capacity, and had not,

in said ordinance or any other, farmed or let said privilege to the defendant, but that the defendant was tearing up said street, on its own responsibility, without any legal authority whatever. That they had called upon the defendant to respect their rights as citizens, and to desist from tearing up the streets and squares, but it had refused to do so.

That complainants are the owners of property in said city, and as such owners and tax-payers, they contribute large sums to its support, and have a special interest in the amount of said taxes and the appropriation thereof.

That the sewers have been constructed at a large outlay, and that a large portion of the taxes paid by them have been applied to the thorough drainage of the city, and the improvement of the squares. That as tax-payers they had a right to insist that nothing should be done by the defendant to impair said system of drainage, or to prevent free access to said public drains, or to diminish the value of corporate property, or to endanger the lives of themselves or families, in the enjoyment of said public squares, or to divert said squares from their legitimate use. That the streets and squares are held by the Mayor and Aldermen in trust for the use of complainants and other citizens, and should be used for the benefit of the tax-payers.

That by the Act of 1866, the Mayor and Aldermen are allowed to let or farm the privileges therein mentioned, upon conditions advantageous to the tax-payers, and that the ordinance under which the defendant claims a right to traverse said streets, contains no condition in favor of said tax-payers.

That the Mayor and Aldermen have no right to give away the franchises, the property of the tax-payers, or to permit their use for any illegal purpose. That they have applied to the Mayor and Aldermen to prevent the unauthorized use of said streets and squares, and to use its power to abate public nuisances, to prevent the illegal obstruction of the streets and squares, but they refuse to interfere in their behalf and are guilty of a breach of trust in the premises.

That the injuries are immediate and irreparable in damages.

That one of the defendants, George W. Wylly, owns a lot on Broughton street, and that the special use of said street is an invasion of his rights, and that he is remediless at common law.

Upon these allegations complainants prayed for an injunction to be directed to the defendant restraining it from laying a horse railroad track, or any other track, upon Broughton street, or Habersham street, or Bolton street, or the squares on Habersham street, until their rights could be heard and determined.

To this bill was attached, as an exhibit, an ordinance of the City Council of Savannah, passed September 29th, 1873, giving the initial point to the Coast Line Railroad Company.

The defendant filed a general demurrer to the bill for want of equity, and moved that the issue as made by the demurrer should first be considered and disposed of before it should be called on to answer, claiming the right to open and conclude the argument on bill and demurrer. The motion was overruled and counsel for defendant excepted.

The defendant then filed its answer to the bill, admitting that it was proceeding to construct a railway from the intersection of Broughton street and West Broad street, through Broughton, Habersham and Bolton streets, in the city of Savannah. That the Wilmington Railroad Company was incorporated by Act of the Legislature, October 10, 1868, attaching a copy of the Act as an exhibit, and that the said Act was amended August 26, 1872, and the style of the company changed to the Coast Line Railroad Company, attaching a copy of this Act also as an exhibit.

That by said Act the defendant was authorized to construct a railroad from such point in the city of Savannah as may be authorized by the Mayor and Aldermen, to any point or points on Wilmington Island, with leave to pass conveniently near to the Cathedral and Bonaventure Cemeteries, which lie in the direction of Wilmington Island. That in pursuance of the authority and requirements of the said Acts, the Mayor and Aldermen, by ordinance, authorized the de-

fendant to build its track from the point of intersection of Broughton and West Broad streets, and that it was proceeding to construct its road from the point so authorized to Wilmington Island by the said cemeteries, in the most direct and feasible route, through Broughton, Habersham and Bolton streets, until restrained by the order in this case.

That the construction of its railway along certain streets of Savannah did not, and would not, in any manner, obstruct or interfere with the free use of the streets, as they had been accustomed to be used, nor would it interfere with the use and enjoyment of the squares of the city, as they had been accustomed to be used and enjoyed. That the complainants to the bill, who largely own and control the Savannah, Skidaway and Seaboard Railroad, had constructed a railway in the city of Savannah through Abercorn street, a street intersected with squares just as Habersham street is, and that that railroad is not considered by them as interfering with the use and enjoyment of said squares. If so, the same is being continually run by said railroad company, with the full assent and permission of the complainants to the bill. That the said Savannah, Skidaway and Seaboard Railroad, owned and controlled as aforesaid, has been operating a railway on Whitaker street for several years, the track of which is upon and over a sewer, and that the same has not proved injurious to the sewer, nor does it interfere with the drainage or health of the city.

That the track of the defendant along the streets of the proposed route does not lie upon the sewer in said streets, but is being built under the direction of the municipal authorities of the city, who indicate the line upon which the track is to be laid. That the said track does not, and will not interfere with the drainage or health of the city.

That Bolton is not a public street, but is private property, and that neither the city nor the citizens have any right of easement over it.

That the complainants in the original bill knew of the intention of the defendant to construct a railway from the intersection of Broughton and West Broad streets, on the line

The Coast Line Railroad Company *vs.* Cohen *et al.*

since used, for several months past. That the work was commenced in the month of April of this year, and it was notorious that many thousand dollars had been expended on the same, and that the work of laying the track was in such a condition that the streets would be extremely inconvenient for the passage of vehicles, etc., having been upturned for the purpose of grading, etc. That no action had been taken to stop the progress of the work until this large expenditure had been made and the laying the track in the city nearly completed.

To the answer were appended copies of the Act incorporating the Wilmington Railroad Company, and the Act amendatory thereto.

Upon the hearing of the motion for injunction, voluminous affidavits were read, which are unnecessary to an understanding of the decision.

The Chancellor granted the injunction as prayed for, and defendant excepted.

The defendant assigns error upon each of the aforesaid grounds of exception.

RUFUS E. LESTER; JACKSON, LAWTON & BASINGER, for plaintiff in error.

1. The Court should have disposed of the issue made by bill and demurrer, before proceeding further in the hearing. Although demurrer, plea and answer may be filed together, they must be disposed of in the order named: Code, 4191, [4132.] No injunction can issue pending a demurrer: 1 Daniell's Chan. Plea. and Practice, (Perkin's edition,) 666 Mar.; Cousons *vs.* Smith, 13 Ves., 164. The Court had power to hear and determine the demurrer: Acts of 1869, p. 136. And, by sustaining the demurrer, to refuse the injunction: Powell *vs.* Parker *et al.*, 38 Ga., 645. In giving notice of application for an injunction on bill just filed, the complainants below put the defendant on its defense at that time, whether by demurrer, by plea or by answer, and consequently waived the notice required by the Act of 1869.

2. The Court had no jurisdiction of the case as made by the bill. The grounds of complaint are: 1. That the construction of the contemplated railway along Broughton and Bolton streets, will prevent free access to public sewers for the purpose of cleansing and repairing the same, and that the good health and sanitary condition of the citizens of Savannah and their families, are very greatly dependent upon the thorough drainage and sewerage of said city. 2. That there will be an invasion of certain squares in said city by horse-cars to be run on said railway, and that this will be a misapplication and abuse of them, injurious to the rights of complainants, as citizens, in said squares as places of safe and pleasant recreation and enjoyment. If these allegations present a nuisance at all, it is a *public* nuisance: Code, 2997, [2946.] The law provides the remedy for a *public* nuisance: Code, 4095, [4026.] And there is special provision made for the abatement of a public nuisance in the city of Savannah: Code, 4875, [4777 ;] Vason *vs.* The South Carolina Railroad, 42 Ga., 631. If the bill present a case of *public* nuisance, there has been condonation of it by the public authorities of Savannah. Still, were a proper case made, in proper form, on the part of the public, a Court of equity might interfere by injunction: Mayor and Council of Columbus *vs.* Jacques *et al.*, 30 Ga., 506. But the case is neither a proceeding to abate a nuisance, nor to restrain it in behalf of the public at large. The bill is filed by private individuals; and they allege no special damage resulting to themselves as contra-distinguished from the public at large.

3. But the allegations of the bill fail to make out a case of public nuisance. It is not averred that there will be embankments or excavations obliterating any portion of the streets. This was the origin of the nuisance recognized in Gleason *vs.* the Albany and Gulf Railroad Company *et al.*, 33 Ga., 615, 616, 617. It is distinctly averred that the cars are to be drawn by horses; this precludes the idea that they are to be propelled by steam; constituting the nuisance recognized by the Court in the case of 42 Ga. A railway so constructed

along the streets of a city as not to abridge the use of it for the other purposes of a street, and employed for the transportation of cars drawn by horses is not *per se* a nuisance : Drake *et al., vs.* The Hudson River Railroad Company, 7 Barbour, 508, 544, 545 ; 9 Paige, 170. The squares in Savannah, for such use, are not to be distinguished from the streets : The S. & T. R. Co. *vs.* the Mayor, etc., 45 Ga., 606, 607.

4. But, even if there had been such allegations in the bill as could sustain the pretence of an equity, they have been sworn away by the answer and the affidavits. The affidavit of Hogg repels the averment of the location of the railway over the sewers. The affidavits of the persons owning the land called Bolton street, and of persons owning lots along the line of Habersham street, repel the assumption that the use of it for the railway will interfere with the enjoyment of the squares.

5. Assuming, then, that the plaintiff in error was constructing its railway through the streets of Savannah without authority of Legislative Act, still no case was presented by the bill which could sustain an injunction.

6. Even though there had been equity in the bill, and the parties complainant had been clothed with the right to present it, still the injunction ought not to have been granted before the question of fact involved had been submitted to a jury: Nelms *vs.* Morgan, 44 Ga., 619; 2 Green's Chancery Reports, 429. The road was designed for the public convenience, and the retaining the streets of Savannah in their actual condition was a great inconvenience. For these reasons alone, were there no others, the injunction should not have been granted: The Mayor, etc., *vs.* Georgia Railroad Company, 40 Ga., 475; Cook *vs.* The North and South Railroad Company, 46 Ga., 620.

GEORGE A. MERCER; HARTRIDGE & CHISHOLM, for defendants.

The plaintiff in error has no right under the Acts of the Legislature or the ordinance of September 29, 1873, to lay a

track through any street or square, or to use such track if laid: See Act 1868, p. 114; Revised Code, sections 4752, 4753, 4743; 11 Peters R., pp. 545, 549, 600; 40 Ga., 619, etc.; 23 Pickering R., 398; 1 Redfield on R., p. 309; Revised Code, section 753; 32 Barbour, 365, 366; 7 Ga., 221, 225; 44 *Ibid.*, 559; 45 *Ibid.*, 609; 33 *Ibid.*, 601, 608, 609, 612, 613; 1 American Railway Cas., pp. 572, 577, 578; Davis *vs.* Mayor, etc., 4 Kernan, (14 New York,) 519, 520.

Any citizen of Savannah has a right, under our statute, to complain of an illegal obstruction of the street. A proceeding in the name of the State would be but a matter of form, and would be proper only where all citizens of the State were equally interested. Citizens of Savannah have a special interest as such: See Revised Code, sections 2946, 4777, 4751, 4024; 40 Ga., 87; 33 *Ibid.*, 602; 45 *Ibid.*, 610, 607.

A *mandamus* would not afford adequate relief, as the road would be finished before it could be heard, and a Court of equity will always interfere where no other complete and adequate remedy is available: See Revised Code, sections 3026, 3153, 3143, 4119.

Complainants allege that they had called upon the Mayor and Aldermen, then trustees, to protect them, and they had refused to interfere. When the trustee refuses to act, the *cestui que trust* suffers a special injury: See Barbour, p. 548; 45 Ga., 607, 610; 22 *Ibid.*, 484, 485.

The complainants not only have a right, as citizens of Savannah, to complain against the construction of the road as a nuisance, but they have a further right, as corporators and tax-payers, to complain of any nuisance or abuse of corporate property or franchises. The privilege of letting or farming the right to run horse-cars on the streets is corporate property as much as the money in the treasury: See 22 Barbour, 484, 485; 15 *Ibid.*, 214, 231. Bouvier defines to farm out "to rent for a certain term:" Vol. 1, p. 575. To let, to grant the use and possession of a thing for compensation: Vol. 2, p. 27.

Complainants allege that the Mayor and Aldermen, then trustees, instead of letting the privilege for compensation, and

The Coast Line Railroad Company *vs.* Cohen *et al.*

thus decreasing the public burdens, have not only given away this corporate property for nothing, but have relieved the plaintiff in error from taxation for four years.   These allegations are not denied, and must therefore be taken as true: See Revised Code, sections 4752, 4753.   The Act moreover (Revised Code, section 4755) forbids the city to depute the privilege for more than ten years, while the ordinance contains no limit as to time: See 4 Kernan, (14 New York,) pp. 532, 533.   Corporators and tax-payers certainly have the right to be heard upon these points: See Revised Code, sec. 4724; 22 Barbour, 415, 484; 45 Ga., 607; 15 Barbour, 206, 212, 213, 218, 219, 230, 231; High on Injunctions, section 792; Schofield *vs.* Eighth School District, 27 Conn., 499: See opinion of Judge Cooley, vol. 5, American Law Rev. 134. Each citizen has a right to complain, though others may approve: 33 Ga., 619; and though the public may be benefited: 7 Barbour, 545; 4 Kernan, 525, 529.

McCAY, Judge.

1. The decisions of the Courts, both in England and America, are quite uniform, that in the case of a purely public nuisance, where no private person receives damage special to himself, the Courts will not interfere, either to enjoin or abate, at the suit of a private individual.   The proceeding in all such cases must be in the name of the public.   In England, and in most of the States, there is an information by the Attorney General, and the reason of the rule is plain.   If the injury is purely a public one, it is one for the public to complain of. No private person has, or ought to have, a right to take charge of the rights of the public.   A judgment, either *pro* or *con*, would bind nobody, since every other citizen has the same right to sue as the moving party, unless, indeed, the rule should exist that the first private person suing should obtain an exclusive right, and a judgment between him and the party complained of bind the world—a rule, however, that would, we think, work badly.   The old rule, and one, as we have said, universally adopted, is the one we have stated.

Kerr on Injunctions, 334; Waterman & Eden on Injunctions, 1 vol., 282.  It was contended, in argument, that this case might fairly come within that rule which allows a tax-payer to file a bill in his own name. against city authorities which are misapplying public funds, as an abuse of a trust: Dillon on M. Cor., sections 729, 730.  But, so far as we can find, this privilege only extends to a misuse of public property, and there is no case where it has been extended to an obstruction or misuse of the streets, except where special damage has come to the complainant, and even then only his rights are disposed of by the judgment.

2. In this case one of the complainants is, by the amendment, alleged to be a lot owner on one of the streets.  We recognize the distinction between the rights of the public and the private rights of a lot owner on the street to a free passage to and from his property on the street.  This is a private right distinct from the right of the public, and a suit will lie for the protection of this right, even where the nuisance is also a public one.  But the bill sets forth no damage, or threatened damage, to the lot.  *Prima facie,* a street railroad, properly laid down, is a benefit instead of an injury to the property holders on the street, and it is not sufficient to justify the interference of equity, for a lot owner to charge that the railroad will injure his lot.  Facts must be set forth, specifications of the injury made, so that an intelligent mind may understand how and to what extent there will be injury.  The railroad company may take issue with the charge, and is entitled to details so that it may reply.

3. But we do not think the charges in this bill make out even a case of a public nuisance.  A street railroad so laid as to be even with the street, and properly laid and kept in order, is no obstruction to the ordinary use of the street.  As all experience shows, it is a very desirable and proper use of a street, and one that cities are every day more and more anxious for.  The franchise consists rather in the right to the exclusive right to the track than in the right to lay the track.

This company has a grant from the Legislature to lay down

The Coast Line Railroad Company *vs.* Cohen *et al.*

a track from such point within the city to the terminus on the seaboard, by way of the cemeteries, as the City Council may prescribe. No special mention is made of streets in the charter, but the very nature of the enterprise to connect the city with the cemeteries, and the reference to the City Council for an initial point within the city, indicate to our minds a fair intent that the use of the streets for the purpose is within the scope of the charter. The right to run the road from *some* point within the city is granted by the charter. That point has been fixed by the Mayor and Council, as the Act incorporating the company provides. How are they to get from that point to the city boundary ? It would be *impossible* to do this without using the streets in *some* way, either by crossing them or by running the road through them. But most fairly we think the intent of the Legislature was that, with the consent of the city authorities, the streets were to be used. Nor do we feel authorized to say that because the Act of 1866 excepted the streets having squares in them from the scheme then contemplated, the same intent is to apply to this Act. There is in the Act incorporating the Coast Line Company no restriction. The initial point is *any* place within the city consistent with the route to the coast by way of the cemeteries. The precise point is left with the Mayor and Council, and there is no limitation of the point to some street or streets not having squares. Doubtless, when the city authorities applied for and obtained the authority to lay down street rails, at first they were themselves averse to such a use of the squares; but experience and observation seem to have satisfied them that this use is not hurtful to those ornaments of the city. Another Legislature may well give a new grant. The Act of September 28, 1868, ratifying the act of the city granting privileges under the Act of December 21, 1866, to the Skidaway Company, does not, as it seems to us, have any significance on this point, since, obviously, there was no call on this ratifying Act, to go further than the city had gone, or had authority to go, in its ordinance granting to the Skidaway Company the right to connect its line with the

streets.   We can hardly suppose the Legislature to have *any* policy in reference to the squares of Savannah.   Practically, this matter must always lie within the control of the city, through the Legislature.   What the city, the people of the city, desire, will and ought, unless vested rights prevent, to be granted by the Legislature.   And we think no argument, based on any indication of State policy, can arise.

Judgment reversed.