THE EVERGREEN CEMETERY ASSOCIATION *vs.* THE CITY OF NEW HAVEN.

The use of land for a burying ground is a public use, and land may be taken for such a use under the right of eminent domain, upon proper proceedings authorized by law.

Where land has been obtained for such a use by purchase and conveyance from the owner, and not by legal proceedings, it is held by as high and sacred a tenure as if it had been taken in the latter mode.

Land held for and appropriated to such a use can not be taken for another public use inconsistent with it, as for a public street, under a general power given to towns and cities to take land for such a purpose, but there must be authority specially granted by the legislature or necessarily and reasonably implied.

Under such authority land appropriated to one public use can be taken for another inconsistent with it.

But where the matter rests upon implication, it will be presumed that the legislature did not so intend, unless there is a clear public necessity for such taking.

A cemetery will be protected in respect to the ornamental portion of its grounds, as well as those that are used directly for interments.

PETITION to the Superior Court in New Haven County for the amending or setting aside of an assessment of damages for a street improvement; brought under a provision of the charter of the respondent city. The petitioners were a cemetery association, organized under the general law with regard to such associations, and owned for purposes of burial certain land taken by the city for the street. The material part of the petition was as follows:

That the city of New Haven, on the 18th day of March, 1873, in pursuance of its corporate powers or otherwise, did order the widening and straightening of Winthrop Avenue, so called, between Oak Street and Davenport Avenue, at an expense of five thousand seven hundred and twenty dollars; that on the 26th day of June, 1874, the court of common council of said city did award and assess to certain property-holders of said city for such lay-out, and determine that said city pay to certain persons in full of all damages over and above all benefits accruing to them by means of the widening and straightening of said avenue, the sum of five thousand seven hundred and twenty dollars; that your applicants are,

and on said 26th day of June, 1874, were property-holders on said Winthrop Avenue, said property having been granted and designated as a place of burial for the dead, and as such property-holders were awarded the sum of twenty-five hundred and twenty dollars for alleged damages to them and their property; and that your applicants are aggrieved by the act of said court of common council in said award and assessment, and therefore pray relief from this court, and assign the following reasons: 1. That said city of New Haven has no right to condemn and take land belonging to said cemetery for said highway. 2. That said lay-out as proposed is unnecessary and uncalled for, and not required by the wants of the city or otherwise. 3. That the amount awarded by the board of compensation is inadequate. 4. That the widening and straightening of said avenue cannot be accomplished without removing the dead. For the foregoing reasons, and such others as may now or hereafter be apparent, your applicants within thirty days from and after the making of said award and assessment as aforesaid, pray that said award and assessment may be amended or set aside, or that such other and further relief may be given as equity may require.

The case was referred to a committee, who found that the proceedings alleged in the petition for the widening and straightening of Winthrop Avenue had been had as alleged and that the petitioners had been awarded the sum stated as damages to their property by the board of compensation of the city. They further found as follows:

By the survey and laying out of the alteration of the avenue a piece of land of triangular shape belonging to the cemetery association, eighteen feet and six inches wide on Davenport Avenue, and running to a point on the east boundary line of the cemetery, about nine hundred feet northerly from the north line of Davenport Avenue, when measured on the east boundary line, and comprising about eight thousand five hundred square feet of land, is taken.

The land thus taken is needed for the purposes of the cemetery, and is now used and occupied by a border eight feet wide of shrubbery, evergreens and other ornamental trees in

part, and in part by a portion of Evergreen Avenue, which is one of the main avenues laid out in the cemetery for the purpose of affording a large number of the owners of burial lots in the cemetery access to their lots, and without said Evergreen Avenue the owners of a very large number of lots would be greatly inconvenienced and practically deprived of the possibility of reaching their lots in carriages.

In order to afford to the owners of burial lots on the cross avenues the same access to their lots which they had before the land in Evergreen Avenue was taken, and in order to restore Evergreen Avenue and the border of ornamental trees and shrubbery, the association must widen Evergreen Avenue, and take from the land now laid out into burial lots a piece of land of the same size as that contained within the limits of said lay-out.

The association now owns all the land that will be required for that purpose except six burial lots, all of which and a large number of other lots on other avenues dependent on Evergreen Avenue had been sold and conveyed by the association long before any proceedings had been taken for the widening and straightening of Winthrop Avenue. In some of the six lots mentioned interments have been made, and none of the six lots can be taken for the purpose of widening Evergreen Avenue without first obtaining the consent of the owners of the same.

All the land embraced within the limits of the cemetery has been conveyed to the association by deed, to hold subject to the provisions of the laws authorizing its organization, and is now so held by the association, except such parts thereof as have been sold to be used as places of burial, which comprise a large part thereof.

The cemetery association on the 6th of April, 1874, made a formal protest against the taking of their land by the city for the street, and has at all times resisted the taking of the land and denied the right of the city to take it.

The damages accruing to the association by reason of the proposed public improvement amount to the sum of $4,714.50. The benefits accruing to the association by reason of the

improvement amount to the sum of $2,193.75, and accrue on account of the frontage of the cemetery on the avenue, but are not confined to that portion of the cemetery adjacent to the avenue; and the rule adopted by the committee for assessing the benefits was to assess the entire frontage of the cemetery on the avenue at the rate of one dollar and a quarter per front foot.   Most of the burial lots adjacent to Winthrop Avenue, along the north half of the front, have been sold and are now held for burial purposes by private parties.

The committee therefore found that if the law was so that the city could take the land in question for the widening and straightening of Winthrop Avenue, the city of New Haven should pay to the Evergreen Cemetery Association, in full of all damages above all benefits accruing to the association by reason of the proposed public improvement, the sum of $2,520.75.   If, however, the law should be held to be so that no benefits could be assessed by the committee against the association by reason of its being purely an eleemosynary association and holding the property as a place for the burial of the dead, or for any other reason, the committee found that the city of New Haven should pay to the association, in full of all damages above all benefits, the sum of $4,714.50.

The committee further found that Winthrop Avenue could have been straightened and widened, and the proposed public improvement made, by taking all the land required for that purpose from the land on the south side of the avenue, belonging to private owners, and without taking any of the land from the cemetery association; and that the public good, convenience and needs would have been as fully advanced and promoted thereby as by the lay-out made.

The court accepted the report of the committee and on the facts so found reserved the case for the advice of this court.

*G. H. Watrous*, for the petitioners.

1.  The land attempted to be taken was all owned, held and needed for the use of the cemetery, and therefore the city had no jurisdiction to take it for the purposes of a highway. Having been by law taken for one public use, it could not be

wrested from that use and devoted to another of inferior sacredness, under the general authority the city has to make and alter highways. *Trustees of First Evangelical Church* v. *Walsh,* 57 Ill., 363; *Bridgeport* v. *N. York & N. Haven R. R. Co.,* 36 Conn., 255, 265; *Boston Water Power Co.* v. *Boston & Worcester R. R. Co.,* 23 Pick., 397; *Springfield* v. *Connecticut River R. R. Co.,* 4 Cush., 63.

2. No necessity for invading this cemetery with a highway will be presumed. *Bridgeport* v. *N. York & N. Haven R. R. Co.,* 36 Conn., 263. The report of the committee shows that none existed in fact.

3. This question, therefore, reaches to, and, we think, defeats the jurisdiction of the city in the premises, and it is not too late to raise a question of jurisdiction on an appeal from the assessments. It could be raised at any time, even after the assessments have been made, by injunction at the instance of the plaintiff, or of any of the lot owners affected by the taking. *City of New Haven* v. *Fair Haven & West-ville R. R. Co.,* 38 Conn., 422, 429. The city's powers are limited and prescribed, and it cannot acquire jurisdiction by usurping it.

4. But suppose the land has been legally taken, no bene-fits can be assessed against us. How can the burial lots not thrown into the highway be enhanced in value by crowding the street into the cemetery. We can use this land only as a place to bury the dead, and it is as abhorrent to reason as to sentiment that for such a use it will be more valuable because a street on one side of it is made more attractive. The more attractive and therefore public the street is, the less attractive will lots near it be to persons seeking a place to bury their dead. Besides, the association is purely and entirely eleemosynary, and all receipts for burial places are expended in improving and fitting the grounds for the same uses. If any assessments could be made against us, the rule adopted by the committee and by the board of compensation is unreasonable. The assessment is $1.25 per front foot from the north to the south side of the cemetery; where the lots are all sold and occupied as well as where they are not.

*S. L. Bronson*, for the respondent.

1. The city had the power to appropriate the land in question. It will not be contended that the legislature had no power to take it or to authorize the municipality to do so, under the right of eminent domain. With such power the municipality would be the sole judge as to the propriety of the act. Hence that portion of the finding that says that the public good would be equally well served by another location, does not affect this case. No appeal has been taken from the lay-out. The power given our towns and cities for highway purposes is broad and extensive. What implication can there be that the legislature did not intend to confer it here? Besides, the land taken has never been appropriated under the right of eminent domain. It is simply a case where a corporation has purchased land and laid out a cemetery. It is believed that the authority to take has never been called in question under any such statute as ours. *Matter of Albany Street*, 11 Wend., 149; *Mayor &c. of Baltimore* v. *Greenwood Cemetery*, 7 Maryl., 517; 4 Bradf., 503, appendix.

2. The city has the power to assess benefits upon the cemetery association. The committee has found, as a matter of fact, that the association has been benefited and the amount. The question for this court is simply to decide as a matter of law whether a cemetery can be benefited. If it can be benefited at all, then the amount fixed by the committee is right. It will be noticed that the legal title to the whole cemetery is in the association. The certificates do not pass the title. The association is the trustee of the lot owners. A large part of the ground, however, is yet unsold and belongs to the association. The land taken is all the property of the petitioners. The claim however of the petitioners is, that their right in the land is for a *specific use*, and that in that case the value to them cannot be enhanced by the proposed improvements. We submit, however, that in most of that class of cases, the rulings of the courts have been that the benefits should be diminished in amount; not that they do not exist. The two cases quoted in Judge BUTLER's opinion in *City of Bridgeport* v. *N. York & N. Haven R. R. Co.*, 36 Conn., 265, (*Matter of*

*Albany Street*, 11 Wend., 149, and *Owners of Grounds &c.*
v. *Mayor &c. of Albany*, 15 Wend., 374,) both decide, not
that there is no benefit, but that land held in this manner is
not benefited as much. So also in *Clapp* v. *City of Hartford*,
35 Conn., 66, we have the same doctrine; and in *Matter of
Mayor &c. of New York*, 11 Johns., 80. This case, however,
presents a different state of facts from any yet before this
court. The benefit claimed to be conferred is a benefit to the
special use for which the land is held. The funds of the
cemetery are devoted to embellishing the cemetery itself.
Does not the widening of the street in front add as much to
the beauty of cemetery property as it does to that of a gentle-
man's residence? A cemetery can as well be beautified with-
out its walls as within. Shade trees in front, well kept turf,
elegant fences—all these things contribute to its beauty; why
does not a broad and handsome avenue in front have the same
effect?

CARPENTER, J. The city of New Haven, under the general
power conferred upon it to lay out, construct and maintain all
necessary highways within its limits, proceeded to widen and
straighten Winthrop Avenue, one of its streets, and, in doing
so, took a triangular piece of land belonging to the petitioners
eighteen and a half feet wide at one end and about nine hund-
red feet long. The land so taken is a part of the land conse-
crated to the burial of the dead, is now used and occupied
by a border eight feet wide of shrubbery, evergreens and other
ornamental trees in part, and in part by a portion of Ever-
green Avenue laid out in the cemetery for the purpose of
affording a large number of the owners of burial lots in the
cemetery access to their lots; and without this avenue the
owners of a very large number of lots would be greatly incon-
venienced, and practically deprived of all access to their lots
in carriages. Thereupon damages were awarded to the peti-
tioners and benefits were assessed against them.

This petition is brought to annul the assessment of damages
and benefits, on the ground chiefly that the city had no
authority to take the land for highway purposes. The power

which the city has to take the land is the same as that conferred by general statute upon towns, there being no special power granted to take any part of this cemetery for such purposes.

The petitioners are incorporated under the statute authorizing and regulating the organization of associations for the purpose of procuring and establishing burying grounds or places of sepulture. The association holds the land, comprising the cemetery, subject to the provisions of the law authorizing its organization, and it is now held by the association, except such parts thereof as have been sold to be used and occupied as places of burial, which comprises a large part thereof.

It is further found that the land so taken is needed for the purposes of the cemetery, and is not needed for the purpose of widening and straightening Winthrop Avenue.

The use of land for a burying ground is a public use, and, for such a purpose, it may be taken, if need be, under the right of eminent domain. The fact that this land is held and used under a deed from the former owner, and was not taken by proceedings *in invitum*, cannot affect the nature of the use. It is held by as high and sacred a tenure as it would have been if the sovereign power of the state, in the exercise of the right of eminent domain, had been called to the aid of the petitioners in acquiring it.

The question then is, whether land already devoted to a public use can be taken by the public for another use which is inconsistent with the first, without special authority from the legislature, or authority granted by necessary and reasonable implication.

There are cases in which it would seem that lands used for a burying ground, have been taken by the municipal authorities for highway purposes. *In the Matter of Albany Street,* 11 Wend., 149; *In the Matter of Beekman Street,* 4 Bradf., 503.

But whether they were taken under a general or special authority does not appear; nor does it appear that there was a necessity for taking them in order to exercise the powers

granted; but it does appear that the question whether the public had a right so to take them without the consent of the owners, was not made and decided in either of the cases referred to.

That the legislature has the power to authorize the taking of land already applied to one public use, and devote it to another, is unquestionable. *Boston Water Power Company* v. *The Boston & Worcester Railroad Company*, 23 Pick., 360; *Springfield* v. *The Conn. River Railroad Company*, 4 Cush., 63; *The City of Bridgeport* v. *The New York & New Haven Railroad Company*, 36 Conn., 255. And this power may be granted either by express words or by necessary implication.

When the power is granted to municipal or private corporations in express words no question can arise. In this case it is not claimed that the respondents were expressly authorized to take the petitioners' land. The question then arises whether, by a reasonable construction of the statute authorizing the respondents to lay out streets and highways, they had the power to take any portion of the petitioners' land for that purpose.

The language is general and broad enough to embrace all lands, whether used for one purpose or another; nevertheless there are cases in which it will be presumed that the legislature intended that it should not apply. It will be presumed that land applied to one public use should not be taken and devoted to another use inconsistent with the first unless there is a necessity for it. Thus it will be presumed that the legisture did not intend to authorize a town to lay out a highway along the track of a railway, or along the bed of a canal, as the two uses cannot well exist together. The one necessarily excludes the other. So also a railroad company, unless expressly authorized, cannot lay its track upon a highway; and when permitted, except in special cases, a substitute road must be provided.

On the other hand, a highway may cross a railroad or a canal, as there is a manifest necessity for it, and it may be done without destroying the franchise, in whole or in part, and without seriously interfering with its exercise.

The same land cannot properly be used for burial lots and for a public highway at the same time. The two uses are inconsistent with each other, and the one practically excludes the other. Land therefore applied to one use should not be taken for the other except in cases of necessity. That brings us to inquire whether the necessity exists in the present case. The facts show not only that it does not exist but that there is hardly an apology for taking the land in question. If taken, it renders a very large number of lots in the cemetery inaccessible to carriages. That inconvenience can be remedied only by making a new avenue. That can only be done by taking six lots sold to private parties, all of which have been actually used for burial purposes. How the association is to acquire the title to those lots, unless the owners voluntarily part with it, it is not easy to see.

On the contrary there is no difficulty in effecting the desired improvement by taking land on the other side of the street. On this point the finding of the committee is emphatic.

They find that "Winthrop Avenue could have been straightened, and widened, and the proposed public improvement made, by taking all the land needed and required for that purpose from the land on the south side of the avenue, belonging to private owners, and without taking any of the land from the cemetery association; and that the public good, convenience and needs would have been as fully advanced and promoted thereby as by the lay-out made."

It can make no difference that the part taken was used for shrubbery and a carriage way. A cemetery includes not only lots for depositing the bodies of the dead, but also avenues, walks, and grounds for shrubbery and ornamental purposes. All must be regarded alike as consecrated to a public and sacred use. The idea of running a public street, regardless of graves, monuments and the feelings of the living, through one of our public cemeteries, would be shocking to the moral sense of the community and would not be tolerated except upon the direst necessity. Yet the right to do so must be conceded if the action of the respondents in the present case can be vindicated. The right to take one part of a cemetery

implies a right to take another; and the right to take one part implies the right to take the whole.

For these reasons we hold that the action of the respondents in taking a part of the cemetery grounds for a highway was illegal; and the Superior Court is advised that the assessment of benefits and damages should be annulled.

In this opinion the other judges concurred.