## Wood *et al. vs.* The Macon and Brunswick Railroad Company *et al.*

1. The sale of the Macon and Brunswick Railroad is valid and binding upon the state, and equity would hold the title good in the purchasers, though all the regulations prescribed for the manner of conducting it had not been literally complied with, if carried into execution substantially by the executive, the purchase money having been largely paid and the transaction virtually ratified by subsequent

acquiescence of the legislative department. Under such circumstances, the case must be strong indeed to authorize judicial interference with the sale.

2. By the lease and subsequent purchase of the road and its franchises, the present company known as the Macon and Brunswick Railroad Company acquired the right to extend and construct the road from Macon to Atlanta, subject to the limitations in the original and amended charters of the company, subsequent legislation thereon, and the constitutional guaranty to the owners of property not to force them to part with any portion of it without just compensation.

3. Though the state may previously have dedicated property along the direct line of said extension to other public uses, it has the reserved right to appropriate a necessary portion of it to other public use, provided such appropriation be made by express grant or necessary implication that such grant was intended; for having parted with it for one public use, in the absence of such new grant, the presumption would be that it had not made another inconsistent with the first.

4. If, therefore, the state herself had dedicated the ground embraced within the limits of the cemetery at Macon to the use of the public as a burying place for the dead, and the track of the proposed extension in the most direct line from Macon to Atlanta passed along the edge of the cemetery adjoining the Ocmulgee river, and was not inconsistent with the prior use of the ground for a cemetery, but passed over ground wholly unsuited to such use, the implication would be strong that the grant to construct the road on such direct line, not being in conflict with the prior dedication, included the grant to pass over such unnecessary part of the cemetery.

5. But where the city of Macon herself had dedicated the ground to the cemetery for herself, and by contract with the railroad company and for a valuable consideration had granted to the company the right of way through a portion of the former dedication not adapted to the former use and not interfering with any private lot conveyed by her to private persons, then it is clear that no such private person would be equitably entitled to interfere with the grant impliedly given by the state and expressly ceded by the city. This is especially so when such use will enure in the judgment of the city to the greater security of the former use and the general ornamentation of the cemetery. The particular improvement and adornment of his own lot is for the private judgment and taste of the owner; the general improvement and security and adornment of the entire grounds is for the city speaking through her authorities;

particularly when they speak, as is conceded, the overwhelming voice of the citizens.

6. Delay in applying for the writ of injunction until large expenditures have been made in acquiring the right of way on the line to the cemetery and in work done within it, and without notice to the company of any intention to make application therefor, will make equity more loth to stay the further progress of the work. The writ is designed to prevent, not to undo ; and without strong reason therefor, if delayed until progress at heavy cost has been made, the application should not be granted.

7. Facts in dispute, with conflicting affidavits, are for the chancellor, and unless his judgment thereon shows an abuse of discretion, this court does not interfere. In this case his judgment thereon is overwhelmingly sustained.

Equity. Injunction. State. Railroads. Sales. Corporations. Cemeteries. Municipal Corporations. Eminent Domain. Before Judge SIMMONS. Bibb County. At Chambers. December 10th, 1881.

This bill was filed by Wood *et al.* against the Macon and Brunswick Railroad Company, the East Tennessee, Virginia and Georgia Railroad Company, and against the Mayor and Council of the city of Macon, alleging an agreement between the Macon and Brunswick Railroad Company and the city of Macon to run the line of said railroad company through Rose Hill Cemetery and the grounds thereof, which had long before been dedicated by the city of Macon to the exclusive use of the public and the citizens of Macon as a cemetery or burial ground, on the faith of which dedication and long use thereof for that purpose, the complainants or their ancestors had bought burial lots in said cemetery grounds, contiguous to the said contemplated line of railway as intended to be run, had built costly and expensive monuments on them and buried their dead in the same ; that the cutting of said railway through said grounds would injure and damage the lots of complainants and monuments erected on the

same seriously, would greatly mar and injure the grounds as a burial place, and would be violative and destructive of the right of complainants as lot owners and persons interested in said cemetery as stated, and they ask an injunction against the consummation of this agreement or the construction of this line of railway through these burial grounds.

The bill of exceptions states that the bill was handed to the chancellor on October 5th, 1881. On October 11th, 1881, he passed an order requiring defendants to show cause why injunction should not be granted, returnable October 22d, 1881, and in the meantime a restraining order was granted to prevent trespassing on the grave of Wood, the father of some of complainants. Service was entered on the bill by the sheriff by having served J. M. Edwards, superintendent and agent of the Macon and Brunswick Railroad and as agent of the East Tennessee, Virginia and Georgia Railroad, personally, and also by serving J. K. Brice, "agent as above set forth," by leaving a copy at the place of transacting the usual business of the companies. The case was postponed from time to time until December 10th, when it was heard.

The Macon and Brunswick Railroad Company answered this bill, denying that the construction would injure the rights of complainants—their property, or that it would detract from the usefulness or beauty of the grounds as a cemetery, but would add to its attractions and be an ornament to it as well as useful; that complainants and other lot owners had no title to the fee or any other right except the right of burial of their dead on the grounds conveyed for that purpose; that the defendant, the Macon and Brunswick Railroad Company, was constructing its road through said grounds, along the bank of the Ocmulgee river, and appropriating said ground to that purpose and use by authority of law contained in the grant of the legislature authorizing the extension of that road by its lessees from the city of Macon to the city of Atlanta, on the line of which contem

plated and authorized extension lay this cemetery. That the construction of the road would not damage complainants, as it would not run through any of their lots, but along the river bank on unoccupied ground. Also that the ordinance on which the agreement between the city and the railroad was based had been passed on August 14th. 1881, and the contract was signed October 27th, 1881, That relying on this ordinance, which had been made public through the press and otherwise, the railroad had gone to large expense in purchasing a right of way on each side of the cemetery, and preparing to run their road along this line. That complainants must have known of these facts, but made no objection, nor did the company have any knowledge of the application for injunction until October 15th. Since that time it has proceeded regularly with its work.

The complainants replied that the persons constructing said railroad were not the lessees of the Macon and Brunswick Railroad, nor their associates, nor had they the legal right to use and control said charter for such purpose; in other words that they had no title or legal right to said charter to make said extension or to appropriate said grounds to such use; and if they were, the legislature had not authorized them to take and appropriate property for this use that had already been dedicated to another public use, nor was the right necessarily implied in the grant to construct and use a railroad between the two points named.

It was insisted that the terms of the act of September 3d, 1879, authorizing the lease or sale of the Macon and Brunswick Railroad had not been complied with, and that, therefore, the present holders of the road did not have the charter powers of the Macon and Brunswick Railroad Company.

Complainants also replied, as to the plea of progress in the construction and outlay of money and labor in the enterprise, in avoidance of the interference by the court now, that the application for injunction was made in time, and that

defendants got notice of the application to the chancellor, and with a full knowledge of its tendency, made extraordinary and unnecessary speed in their work—on this particular part of the work—in order to thwart and frustrate the action of the courts thereby; and that this, therefore, having been done with their eyes open as to the intention of complainants, and to obtain that advantage, was of no avail.

The other defendants, except the East Tennessee, Virginia and Georgia Railroad, as well as the Macon and Brunswick Railroad, answered, denying the allegation in the bill and amendments. But the answer of that defendant contains all that is necessary to an understanding of the points decided. Some point was also made in regard to the service on the East Tennessee, Virginia and Georgia Railroad, but it is immaterial here. Numerous and conflicting affidavits were introduced in support of the bill and answers, which it is unnecessary to set out in detail. The chancellor refused the injunction, and complainants excepted.

LYON & GRESHAM; H. F. STROHECKER, for plaintiff in error.

BACON & RUTHERFORD; HILL & HARRIS, for defendants.

JACKSON, Chief Justice.

The powers of chancery are invoked in this case to enjoin the Macon and Brunswick Railroad Company, in the hands of its present management, from extending its track from Macon to Atlanta through Rose Hill cemetery, in the former city. The injunction was denied by the chancellor, and complainants, who are private owners of certain lots in the cemetery, except to that judgment and assign it for error in this court.

1. They say that the present company have no title to

the road because the governor did not comply with the terms of sale prescribed by the general assembly, and therefore that the injunction should have been granted.

Substantially we think that the terms were complied with, and if they were not in mere particulars, not of vital consequence, that fact would not operate to render void the sale, at the instance of private parties especially, so as to prohibit the company from going on with the road, the state not interposing at all, but having received part of the purchase money, and being equitably bound. to refund it before she herself could well set the sale aside.

She has virtually acquiesced in it, not only by the acts of the governor, but of subsequent legislatures.

2. We think, therefore, that it is beyond doubt that the present company, by virtue of the lease and subsequent purchase of the road from the state, have title thereto, and have acquired the right to construct or extend the road from Macon to Atlanta, according to the original and amended charter and subsequent acts of the general assembly. The main purpose of the legislature, it seems to us, was a competitive line with the Central Railroad from Macon to Savannah and from Atlanta to Macon, and the extension was in the legislative mind all along their action on the lease and sale authorized by them. To say that the lessees who afterwards purchased under the act of the general assembly did not acquire the right to extend the road, would be to defeat the main current of the legislative will, and divert it from the course in which the legislature designed the whole legislative action to flow. Of course, this right to construct the road is subject to all the limitations which the constitution and laws affix to all grants of such franchises, and private and municipal rights must all be respected by the company as they progress in the work. If, therefore, the citizens of Macon and owners of lots in her cemetery have rights which in equity and good conscience inhere in them by virtue of the constitution and laws, and if this company

seeks to violate them and is about to do so, equity would intervene, if no other remedy appeared, even to the harsh extent of arresting a great work of internal improvement or diverting the course of that work. The question in this case, therefore, is, are there equitable rights in these complainants, and are those rights so jeopardized by the action of this company in passing through the cemetery as to require the remedy by injunction.

3. What are the rights of complainants? They allege that they own lots in the cemetery, and that the passing of this road through the cemetery does not consist with their use of the lots for the purposes of burial ; that the land over which this road now seeks to pass was dedicated to the public for those purposes of burial; and that the generally assembly could not, and did not in fact, mean to annul the prior dedication.

We think it clearly established by our own adjudications, without reference to other authorities, that the state, though it may have dedicated property to one public use, by the exercise of its right of eminent domain, has the power to dedicate a portion of the same property to another public use, not inconsistent with and destructive to the first use. The doctrine has been applied to country roads and streets, where grants to railway companies to use portions of such public ways have been upheld, especially with the consent of the public authorities, over the particular ways, and without regard to objection of private persons. 43 *Ga.*, 201 ; 44 *Ib.*, 547 ; 45 *Ib.*, 602 ; 50 *Ib.*, 451.

4. The point then becomes this question : even conceding that the state had dedicated this ground for a cemetery, has it authorized the use of it for another great public object? That must clearly appear either by express grant or by necessary implication ; because the presumption would be that if she had granted all of it for one public use, she would not make another grant inconsistent with the first. She has granted the right to run the

road directly from Macon to Atlanta—to extend it from the former to the latter place. So, to extend it, it must° pass through the city of Macon, because its present terminus is on the side of Macon farthest off from Atlanta, and the direct line contemplated would pass along the bed of the Ocmulgee river, that being the most direct and convenient route. The proof before the chancellor satisfied him, and the depositions in the record sustain his judgment beyond doubt, that the latter grant is not at all inconsistent with the prior grant, if there had been one. The road runs along the river, close to it, and on ground not capable of being used for the burial of the dead, and when built it will operate as a sort of breakwater, and not detract from the beauty of the cemetery. Such is the testimony—the decided weight of it,—and our rule is unvaried, never to interfere with the chancellor on a matter of fact, if there be evidence enough to sustain his ruling thereon.

5. But it seems that the city has assented to this act of the company, and not only so, but that she made the dedication herself. The state gave the common to her, and she dedicated this part of it for burial purposes. She now consents to the use of a part of it by the road, in her judgment unimportant for the former use ; she contracts for a consideration that the company may use such unimportant part, and private persons seek to defeat her action and annul her contract.

We cannot see that their particular lots are in any wise injured by the contract. The general government and ornamentation of the cemetery is for the city. She may not injure the private property of any lot owner therein, but it is for her to lay off avenues and cut down or plant trees and shrubbery for the general beauty of the whole, and to adopt measures for its security ; and it will not do to hold that two or three, or a hundred, lot owners have the right to appeal to the courts and stop her in such preservation and ornamentation.

In this case but very few, three I think, of the lot owners are complaining, while the action of the city authorities is sustained by the overwhelming voice of the citizens. So that the effort to set up equitable rights in such a case as the facts here make must fail, no matter whether the doctrine in regard to the power of the state, if she had dedicated the particular ground for the cemetery, be right or wrong.

6. It seems, too, that these complainants are too slow to be permitted to set up equitable abstract rights, even if they ever possessed them.

The contract between the city and company had been long made; the line towards the cemetery laid off; money expended thereon in rights of way and other purposes; the road-bed actually laid or graded on a portion of it, before complaint was made.

The principle that to the vigilant, and not to the sleepy, equity opens her portals is applicable here, and applies with sufficient force always to close her doors when by reason of that sleep the adverse party has expended money and labor, thinking that nobody interested would oppose the right to complete what had been commenced in the confidence which non-action by everybody interested had engendered.

7. As before stated, facts, when in dispute are for the discretion and judgment of the chancellor, and the face of this court is set like flint, and has been time out of mind, against interference therewith, unless grossly abused. In this case there is no abuse, but the judgment on facts and law was demanded and must be affirmed.

Judgment affirmed.

Cited for plaintiffs in error: 6 How. R., 507; 7 *Ib.*, 185; Pierce on Railroads, 154–5–6; 21 Am. R., 643; 57 Ill., 363; 43 Conn., 234; 53 N. Y., 575; 20 Hun, 201; 12 *Ga.*, 239; 43 Conn., 234; 33 *Ga.*, 601; 47 *Ib.*, 565; 49 *Ib.*, 476; Code, §2223; High on Inj., 139, 140, and note; 12 *Ga.*,

239; 48 *Ib.*, 44; 29 La., 38; Acts of 1878-9 p. 115; 16 Wall., 203; 9 Wheat., 738; 14 Pet., 497; 12 *Ib.*, 524; 101 U. S., 601; 2 Dill. on Mun. Corps., 3d Ed., 914 *et seq.*

For defendants: Acts 1878-9, p. 115; Fort's Comp., p. 53; 8 *Ga.*, 228; 17 *Ib.*, 29; 20 *Ib.*, 797, 802; 46 *Ib.*, 350; Code, §§2360–61; 5 *Ga.*, 22: 6 *Ib.*, 458; 25 *Ib.*, 374; Field on Corp., 71; Fort's Comp., pp. 21, 50, 53; 43 *Ga.*, 200; 44 *Ib.*, 547; 45 *Ib.*, 602; 51 *Ib.*, 451; 23 Ohio, 510; 6 How., 507; 13 *Ib.*, 71; 17 Conn., 196; 3 Bland (Md.), 442; 24 Iowa, 455; 8 Dana, 289; 14 Gray, 93; 10 Min., 82; 31 Md., 180; 10 N. J. Eq., 352; 36 Penn., 99; 7 Ind., 479; 18 Barb., 222; 3 Head, 596; 22 Vt., 458; 33 Mo., 128; 25 N. Y., 526; 1 Redf. on R. R's, 268; Const., 1877, Sup. to Code, 575; 39 Md., 631; 66 Penn., 411; 42 *Ib*, 132; 46 N. Y., 503; 5 Am., 377; Acts, 1835, p. 226; 50 *Ga.*, 451; Code, §§2997–8, 4094; 59 *Ga.*, 190; 54 *Ib.*, 29; 13 Barb., 646; Acts of 1847, p. 36; and Record, pp. 5 and 7.