## Shaw *against* Shaw.

A decree of divorce, on the ground of intolerable cruelty, will not be granted, unless the acts complained of are in fact intolerable, and as cruel at least as those for which, under the head of *extreme cruelty*, the courts in *Great-Britain* and elsewhere divorce a *mensa et thoro*.

Vulgar, obscene and harsh language, with epithets suited deeply to wound the feelings and excite the passions, but not accompanied with any act or menace indicating violence to the person, does not constitute such cruelty.

*Litchfield,*
June, 1845.

Shaw
*v.*
Shaw.

The unreasonable exercise of the husband's authority in regard to his wife's social intercourse with her relatives and friends, excluding them from his house and forbidding her to visit them, does not constitute such cruelty.

Where it was found, that the husband repeatedly compelled his wife, against her wishes and remonstrances, to occupy the same bed with himself, when, in consequence of her ill health, it was indelicate, improper, unreasonable and injurious to her health so to do, and was calculated to endanger, and did in fact endanger, her health; though this effect was not in fact intended or foreseen by him; it was held, that such conduct of the husband did not constitute intolerable cruelty, within the statute.

And where it was further found, that though she had no reason to fear from him personal violence of any other character; yet she had just reason to fear, that he would again compel her to occupy the same bed with him, regardless of the consequences to her health; it was held, that this fact, neither by itself, nor in connexion with the other facts in the case, entitled her to a decree of divorce. [One judge dissenting.]

THIS was a petition for a divorce, brought by *Emeline Shaw,* against her husband, *Daniel T. Shaw,* on the ground of intolerable cruelty.

On a hearing before *Hinman* J., at the term of the superior court, at *Litchfield,* in *February,* 1845, the following facts were found.

The parties were lawfully married, on the 24th of *October,* 1841. They cohabited together, as husband and wife, until the 10th of *June,* 1844, when the petitioner left the bed and board of her husband, and has ever since continued to live separate from him, with her mother. During their cohabitation, she was a kind and affectionate wife. She is however a woman of an irritable temperament, and during a great part of this period, she was in delicate and feeble health. He often spoke to her in an intemperate and abusive manner; and on several occasions, in the presence of her children by her former husband, he made use of abusive and obscene language to her. On one occasion, he called her " an old hypocrite;" on another, " an ugly devil;" on another, " an old imp of hell;" on another, he said " she was worse than the women at the *Five Points* in *New-York;*" and on another, he charged her with having been to *New-York,* to have illicit intercourse with other men. At times when her health was such as to make it improper that she should have sexual intercourse with her husband, he unreasonably objected and refused to suffer her to occupy a separate bed; and on two such occasions, he took her, by force, from the bed of her

*Litchfield*,
June, 1845.

Shaw
*v.*
Shaw.

daughter, to which she had retired, and compelled her to occupy a bed with himself. On other occasions, he compelled her to remain with him in bed, against her wishes and remonstrances, when, in consequence of her ill health, it was improper, unreasonable and injurious to her health so to do; which conduct was calculated to endanger, and did in fact endanger, her health; and in consequence of it, she left his bed and board.

The court, however, did not find, that there was any other intention on his part, to impair her health, than such as is to be inferred from the facts above-stated; nor was he guilty of any other acts of cruelty towards her person, except for the purpose of compelling her to occupy a bed with himself. But he was unreasonably, and without any just cause, jealous of his wife, and unwilling that she should visit her friends, or have any intercourse with them: particularly, with her mother and the mother of her former husband. He frequently forbade her visiting them; and on one occasion, when her mother-in-law had called to see her, in consequence of her ill health, he unreasonably turned her out of his house, and forbade her to come there again. On another occasion, when his wife was desirous of sleeping at the house of her mother-in-law, and when her health was in such a state as to make it improper that she should occupy the same bed with him, which he well knew, he forbade her to leave his house, and endeavoured to confine her, to prevent her doing so; but she escaped from the house, by getting out of the window, and remained at the house of her mother-in-law, during the night.

The court also found, that when the petitioner was sick, her husband was kind to her; nor had she any just reason to fear any other personal abuse than such as is to be inferred from the facts aforesaid; but she had just reason to fear, that he would compel her to occupy the same bed with him, regardless of the consequences to her health.

The case was reserved for the advice of this court as to what decree ought to be passed.

*Sedgwick* and *Seymour*, for the petitioner, contended, That the facts found authorized the court, under the late statute, to separate these parties. In the first place, if the

cruelty be such as to defeat the great ends of the marriage institution, the case is within the statute, though no bodily harm may be done or threatened. Here, the insulting and obscene language of the husband to his wife, uttered in the presence of her children; the torture inflicted upon her social affections and sympathies; and the barbarous and disgusting abuse of his marital rights—are surely *cruel* enough; and are they *to be borne?* Is such conduct compatible with the holy purposes for which marriage was instituted? But secondly, the finding shows, that the petitioner's health was endangered, if not impaired, by the conduct of her husband. This, by all the authorities, is a sufficient ground for the relief sought. *Evans* v. *Evans*, 1 *Hag. C. R.* 35. (4 *E. Ecc. R.* 310.) 2 *Kent's Com.* 126. (2nd ed.) Thirdly, the blameless conduct of the petitioner, in this case, aggravates the brutality of her husband, and entitles her application to a favourable consideration.

*Church* and *Hubbard*, for the respondent, contended, 1. That the expression "intolerable cruelty," as used in the statute, imports such *personal violence* as cannot be endured, without perishing, or extreme suffering. It must at least endanger the life or health of the party. *Warren* v. *Warren*, 3 *Mass. R.* 321. For all cruelties of a less degree, the remedy is in the legislature, not in the courts.

2. That the facts found in this case do not amount to the *sævitia* of the civil law, or such cruelty as would justify a separation a *mensa et thoro* in the ecclesiastical courts of *Great-Britain*, or in the chancery courts of some of our sister states. *Waring* v. *Waring*, 1 *Phil.* 132. (1 *E. Ecc. R.* 210.) *Evans* v. *Evans*, 1 *Hag. C. R.* 35. (4 *E. Ecc. R.* 310.) *Perry* v. *Perry*, 2 *Paige* 501. *Lawrence* v. *Lawrence*, 3 *Paige* 267. 272. Words, however abusive or offensive, do not amount to such cruelty; nor does violence, not endangering life, or injuring the person, or constituting a breach of the peace. Here, nothing has been done by the respondent, which could be the subject of a criminal prosecution. He used harsh and improper language; but what provocation this "irritable" woman gave him, the case does not disclose. Her *curtain lectures* are not reported. No *intention* to injure her person or health, appears. That he was

attached to her, is evident even from his jealousy. It is found that he was kind to her in sickness. The mere want of consideration and a delicate regard for her health, in the exercise of his marital rights, is surely not a ground of separation—much less of divorce *a vinculo matrimonii.* As to his interference in her intercourse with her relatives and friends, it is sufficient to say, that this was within his legitimate province. He may have acted discreetly, or otherwise. In either event, his discretion is not a subject of revision here.

WILLIAMS, Ch. J. By a recent act of the legislature, the powers of the superior court in granting divorces are enlarged, and they are required to grant divorces in cases of habitual intemperance and intolerable cruelty. This application is founded upon the last ground; and the superior court, having found the facts, asks the advice of this court as to the decree it shall pass.

It is not for the court, in settling this question, to enquire whether an increased facility in obtaining divorces, will, or will not, add to the evils the law designed to guard against.

An eminent jurist has told us, that in the exercise of a judicial cognisance over numerous cases of divorce, he has had occasion to believe, that the sin of adultery was sometimes committed on the part of the husband, for the very purpose of the divorce. *2 Kent's Com.* 106. *n. a.* (2nd ed.) And a foreign judge of not less experience says, that it must be carefully remembered, that the happiness of the married life is secured, by its indissolubility, and that necessity is a powerful master in teaching the dictates it imposes; and in cases of this character, he says, it is the duty of courts, and consequently, it is the inclination of courts, to keep the rule extremely strict. *Evans* v. *Evans,* ‡ *Hag. C. R.* 35. (4 *E. Ecc. R.* 310.)

With these principles in view, we proceed to the enquiry, what is that "intolerable cruelty" spoken of in the statute? It doubtless speaks of acts done to the wife herself; and we understand it to import barbarous, savage, inhuman acts. They must be of that character as to be in fact intolerable, *not to be borne.* The legislature must have had in view acts as cruel at least as those for which, under the head of *ex-*

*Litchfield,*
June, 1845.
Shaw
*v.*
Shaw.

HARVARD LAW LIBRARY

*treme cruelty,* the ecclesiastical courts in *Great-Britain* divorce *a mensa et thoro ;* and those decisions may furnish some assistance upon the subject, though they are not to be taken as authority.

It is said by Sir *William Scott,* that mere austerity of temper, petulance of manners, rudeness of language, want of civil attention and accommodation, even occasional sallies of passion, if they do not threaten bodily harm, do not amount to legal cruelty. They are high moral offences in the marriage state ; but still do not amount to that cruelty, against which the law can relieve. The danger of life, limb and health, is usually inserted as the ground upon which the court has proceeded to a separation. The causes must be such as show an absolute impossibility that the duties of the married life can be discharged. What wounds the mental feelings is, in few cases, to be admitted, not accompanied with bodily injury, either actual or menaced. *Evans* v. *Evans, ubi supra. Westmeath* v. *Westmeath,* 2 *Hag. Sup.* 1. (4 *E. Ecc. R.* 238.) These principles seem to have been recognized, by the court of chancery in *New-York. Perry* v. *Perry,* 2 *Paige* 501. *Burr* v. *Burr,* 10 *Paige* 20. 32. & seq.

It is not easy, perhaps it is impossible, to give a description, such as will meet every case which may arise. Negative descriptions (says the eminent judge so often cited,) are perhaps the safest definitions which can be given, under the infinite variety of cases that may come before the court.

The first thing to be considered, in the case before us, is the language made use of, by this defendant, towards his wife. It is vulgar, obscene, harsh—accompanied with epithets calculated deeply to wound the feelings and excite the passions of the person to whom they were applied. They were, however, accompanied by no act or menace indicating violence to her person. Such language, if provoked, cannot be justified ; if unprovoked, is disgraceful ; but when we look further, and find, that he was jealous of his wife, it is not so much to be wondered at, as we have been told by authority, that "jealousy is the rage of a man." The unfortunate victim of this passion is indeed to be pitied ; but the law furnishes no remedy for conduct like this. It may be intolerable, but is not intolerable cruelty.

*Litchfield,*
June, 1845.

Shaw
*v.*
Shaw.

Again, influenced by the same evil passion, the defendant has been unwilling his wife should visit her own mother, and her mother-in-law, and other friends, and has forbidden such intercourse ; and once he turned the mother-in-law out of the house, without cause, and forbade his wife to leave the house.

This conduct is certainly harsh, if not cruel ; but, as the husband must have the right to say who shall be admitted to his house, and in some measure, to regulate the intercourse of his wife, the court cannot draw a line by which his authority can be restrained. The fancies of a jealous man are as ungovernable as those of a madman, and often show themselves as suspicious of their best friends. But the unreasonable exercise of the authority of a husband, in such case, has never been held to be that kind of cruelty, which would authorize a separation.

The claim is not simply upon that ground ; but it is said, his conduct towards her has been such as to endanger, if not impair, her health.

This is the only part of the case, about which there has been much hesitation in the minds of the court.

It appears, that the defendant insisted upon his marital rights, against the wishes and remonstrances of his wife, when, in consequence of her ill health, it was indelicate, improper, unreasonable and injurious to her health so to do, and was calculated to endanger, and did in fact endanger, her health ; though there was no intention on his part to do that, unless it may be inferred from these facts. It is also found, in connexion with this, that he took her by force from her daughter's bed. There is, however, no claim, that by this act, he intended to injure her, or did injure her.

The question, then, comes to this ; were these acts, such acts of intolerable cruelty as are a cause of separation ? No case of this kind is known to have been brought before the court. It is claimed to be within the class of cases where the violence impaired or endangered health ; and it may be said, that the motive is not looked at, in such cases. But the cases found in the books, are cases of violence, where the natural consequence would be injurious or dangerous, and where the act, therefore, was unlawful. Here the act in itself was a lawful act—in ordinary circumstances, not injuri-

ous nor dangerous. It can, therefore, hardly be classed with those cases where an injury must almost necessarily follow from the act done. The impropriety of the act, and the injury from it, depended upon another fact—her state of health—of which he might not be apprised, in such a manner, as to make it intolerable cruelty in him. The court have indeed, upon the evidence before them, found, that the act was injurious to her health, and endangered it ; but it is not found, that *he knew* this would be the consequence. It is not even found, that he knew her health was such as to be endangered by it. We must believe from what is disclosed, that he knew, that such was her claim ; but are we to allow nothing to the innocent opinions of a man mad with jealousy? Are we to allow nothing to the frailty of human nature, excited by passion ? Are we to couple an act of this kind with an act where a violent blow was given, which must greatly injure or endanger, and which was so intended ? In a case of so delicate a nature, the court ought not to interfere, but for the most substantial reason. The least that can be required, is, that it should be proved, that he had a reasonable ground to apprehend serious injury to her health. We know that in such a case, it is difficult to prove the precise state of facts, on the one side; and it is no less difficult to explain them, on the other. In a case of this kind, where the conduct charged is not in itself inhuman, but where its character is to depend upon extrinsic facts, of which facts the parties are in the first place to be judges, we must allow something to a want of correct information of facts, and something to incorrect judgment; whereas under the influence of excited passion, in every case where a doubt existed on such a subject, it becomes a reasonable man to exercise reason. But we cannot say, that in any case of doubt, the party is to be charged with cruelty, intolerable cruelty, which is to be a legal cause of separation.

One further claim is made. The court finds, that she has no reason to fear any personal violence, except such as is to be inferred from the facts found ; but she had just reason to fear, that he would compel her to occupy the same bed with him, regardless of the consequences to her health. Whether her health remains as delicate as it has been, or whether it will so remain, are facts not found, and are not known. On

*Litchfield,*
June, 1845.

Shaw
*v.*
Shaw.

this part of the case, the consequences are too contingent, and too remote, to lay a foundation for the action of this court.

A majority of the court are, therefore, of opinion, that the petitioner is not entitled to relief.

In this opinion WAITE and HINMAN, Js. concurred. CHURCH, J. dissented; and STORRS, J. was absent.

Petition dismissed.