## ENGLISH vs. ENGLISH.

Decree of divorce from bed and board forever, on the ground of extreme cruelty, consisting mainly in gross abuse by the husband of his marital rights, rendering it unsafe for the wife to cohabit with him, or to be under his dominion or control ; the parties left at liberty to apply by mutual, free and voluntary consent, to be discharged from the decree.

Bill for divorce from bed and board. On final hearing on pleadings and proofs.

*Mr. Jacob Weart* and *Mr. I. W. Scudder*, for complainant.

*Mr. R. Gilchrist* and *Mr. B. Williamson*, for defendant.

THE CHANCELLOR.

The bill is filed for a divorce *a mensa et thoro*, on the ground of extreme cruelty. The main charge is gross abuse of marital rights. I shall leave out of consideration all the others which were urged on the hearing, because they are either not pleaded, or if pleaded, are perhaps, under the evidence, not of themselves sufficient to control the judgment of the court. The case is of such a nature, and the relations with which it deals are of so delicate a character, that the court would gladly have been spared the necessity of judging between the parties. The complainant, however, has invoked its aid and protection, and the defendant denies her right to it ; it therefore becomes the duty of the court, however unpleasant the task, to dispose of the questions presented for determina-

tion. The parties were married in 1867. The complainant is, and since June, 1873, the date of the birth of her third child, has been, afflicted with a uterine disease of such a character as to make connubial intercourse very distressing to her. She speaks of it as " agonizing," and as causing her intense suffering, indescribable pain. Notwithstanding her condition, and in spite of her remonstrances and entreaties, the defendant has, ever since that time, insisted on having intercourse with her, frequently even using force to accomplish his purpose. To her entreaties and expressions of apprehension that the intercourse would be fatal to her, he would reply, " No fear of its killing you ; you will not die until your time comes ; you know how I am—I cannot control myself;" or, " You have stood it before and will stand it again ; you know I cannot help it;" or, "It is the same old story; I am sick of hearing it." She swears, that from June, 1873, to November, 1875, (on the 6th of which last-mentioned month she left his house and went to her father's,) with the exception of two weeks after the birth of her child in the first-mentioned month, and the two weeks after her miscarriage in 1874, he had intercourse with her every night when her catamenia were not upon her, (and it appears that he did not spare her even then,) and frequently twice and sometimes three times in a night ; and she says she has been kept awake "many and many a night " by the pain she has suffered during and after intercourse.

This treatment continued up to the night of the 2d of November, 1875, when, after he had had intercourse with her against her remonstrance, which she urged on account of the pain which the act would cause her, he sought it twice again, once at about midnight, and the last time at about three o'clock in the morning, when he strove to accomplish his purpose by force, and only desisted at the crying of her and the children. She swears, that he then struck her in the back with his fist, and that, subsequently, when they had both got out of bed, he, violently striking his fist on the mantle piece, said to her, " I'll fix you, you can make up your

mind to that," and this, she says, he repeated several times. She testifies, that when he commenced that night, she told him she could not stand it, that she felt unusually ill, and he replied, "You will have to stand it." She says she told him she felt so sick and weak that she was afraid she would not live long if he persisted as he had done lately; to which he answered, "That there was no fear of her; that she would not die till her time came;" and she says he then held her down to the bed and accomplished his design. She adds, that she suffered the most excruciating pain, and that she cried and told him of her sufferings; she says also, that in holding her down he bruised her limbs so that they were lame and sore for more than two weeks afterwards. The character of his conduct on that occasion, is shown by the fact that from that time until the 6th of November, when she left the house and went to her father's with her two children, he was morose and sullen, and did not notice her or the children. He admits that this was caused by her refusal to submit herself to him on the night of the 2d. Such gross and reprehensible abuse of marital rights as that of which he has been guilty, is just ground for a divorce from bed and board.. *Moores* v. *Moores*, 1 *C. E. Green* 275 ; *Shaw* v. *Shaw*, 17 *Conn.* 189 ; 1 *Bishop on Marr. and Div.*, § 760.

But it is insisted by the defendant's counsel, that if the divorce prayed for be granted, it will be in contravention of the settled rule of the court, that a divorce will not be granted on the testimony of the complainant alone.

The testimony of the complainant does not stand alone, however. Strong corroboration of it is found in that of both of the physicians as to her physical condition, and also in the defendant's own testimony. He says that eight or nine months prior to July 1st, 1875, she assigned her delicate health and weakness as a cause of her unwillingness to submit herself to him; that she assigned her feebleness as an objection; that she was in delicate health between July and November, 1875; that she told him that her physician said she should have rest, that she should abstain from intercourse with him ;

that on the night of the 2d of November, 1875, she told him she was not very strong, that she felt delicate, and that she did not want him to have intercourse with her; that he struggled with her in bed, that night, in his endeavor to effect his purpose; that she cried when she jumped out of the bed, and that she cried because she did not want him to have connection with her. He further admits that she often tried, by physical means, to protect herself against him, and that she complained that his intercourse with her injured her, that it made her weak.

There can be no doubt that she was so diseased that connubial intercourse inflicted great and distressing pain upon her; nor can there be any doubt that her condition was known to him. According to his own testimony, he insisted on having connection with her against her will, and her remonstrance and entreaties, urged on the ground of her delicate and diseased condition; and he even, by his own admission, struggled with her to effect his purpose. The rule which he invokes in his aid, cannot avail him. In the light of all the testimony, her statements are entitled to credit, and if so, she is entitled to the relief which she seeks. He has been guilty of extreme cruelty towards her, so as to render it unsafe for her, under existing circumstances, to cohabit with him or to be under his dominion or control.

A divorce from bed and board forever, will be decreed. The complainant's health, however, may hereafter be restored, and it may become desirable that they should again live together. In order that the decree now pronounced may not be an insuperable obstacle to such a re-union, leave will be given to the parties to apply, by mutual, free, and voluntary consent, to be discharged from this decree.

The custody of the children will be awarded to the complainant, subject to the future order of the court. The boy is about seven years old, and the girl is nearly five. Provision will be made for free access, at proper times, by the defendant to his children; and the parties will have leave to apply, from time to time, as occasion may arise, in reference to the custody,

maintenance and education of the children. On the hearing, it was urged by the defendant's counsel, that the court should, in disposing of the custody of the children, take into consideration a promise made by the complainant, previously to the performance of the wedding ceremony, that the children of the marriage should be brought up in the Roman Catholic faith. She then was and still is a Protestant. On the other hand, the defendant then was and still is a Roman Catholic. The promise in question is alleged to have been made to the priest by whom they were married, and who required it of her as a prerequisite to the marriage, without which he would not perform the ceremony. It was not made to the defendant, nor was there any agreement between her and him on the subject. The promise thus made cannot control or influence the action of this court in disposing of the children.

The defendant will be ordered to pay to the complainant, until the further order of the court, for the support and maintenance of her and the children, and the education of the latter, alimony at the rate of $25 a week, and to pay her costs of this suit and a counsel fee of $200 to her counsel.