English *v.* English.

ENGLISH, appellant, and ENGLISH, respondent.

1. A divorce *a mensa et thoro*, for extreme cruelty, will be granted where there is a gross abuse of marital rights.

2. A separation is not decreed as a punishment for past misconduct only, but mainly as a protection against future probable acts of cruelty; this

probability being based upon the former conduct, and the character and disposition of the parties.

3. Where there is no reasonable apprehension of a continuance of such cruelty, such divorce will not be granted.

On appeal.   See facts of case in proceedings in chancery, and opinion of Chancellor, *ante, p.* 71.

*Mr. B. Williamson* and *Mr. Gilchrist,* for appellant.

*Mr. J. Weart,* and *Mr. I. W. Scudder,* for respondent.

The opinion of the court was delivered by
SCUDDER, J.

Upon a bill filed by Abby L. English for divorce *a mensa et thoro,* on the ground of the extreme cruelty of her husband, John English, a decree has been made that they be separated from bed and board forever; provided, however, that the parties may, at any time thereafter, by their joint and mutually free and voluntary act, apply to the Court of Chancery for leave to be discharged from that decretal order.   The custody of the infant son and daughter of the parties was given to the complainant; and it was further adjudged and decreed that the defendant pay to the complainant $25, in weekly payments, for the support of herself and their children. From this decree an appeal has been taken to this court.

Our statute (*Rev.,* 1874, § 5, *p.* 255,) enacts that for extreme cruelty in either of the parties, the Court of Chancery may decree a divorce from bed and board forever thereafter, or for a limited time, as shall seem just and reasonable.

In *Moores* v. *Moores,* 1 *C. E. Green* 279, it is stated that a gross abuse of marital rights, resulting in injury or suffering to the wife, may constitute "cruelty" in the eye of the law, and justify the wife in separating herself from her husband. The law, at the time of this opinion, did not differ from the present statute, and the learned Chancellor meant that such conduct would constitute "extreme cruelty" within the terms of the statute.

This is the charge made in the complainant's bill, which has been proven in the judgment of the Court of Chancery; and upon the authority of the above-cited case, this decree of perpetual separation has been made, unless the parties shall voluntarily apply for a discharge. So far as the action of the court is concerned, it is a separation of this husband and wife forever.

The act of separation is so important in its consequences to the parties and to their children; it is so contrary to the policy of the law, which rather seeks to "set the solitary in families," and keep them thus united for their own good and for the welfare of society, that it is important in every case to examine carefully whether those cogent reasons are to be found which constrain the court to allow and order such separation.

We shall adopt the specific definition of extreme cruelty which has been approved in this case, and inquire whether there has been a gross abuse of marital rights. Such abuse must be attended with suffering, injury to the health, and be against the will of the wife.

The case shows that from the time of the marriage, on August 21st, 1867, to June, 1873, there is no complaint that she was abused in this respect. But from that date up to the 6th day of November, 1875, when she left her husband's house, taking with her their two little children, she says that he has thus injured her. On June 3d, 1873, the third child was born, and in the long and difficult delivery, which was effected with instruments, she sustained such hurt that she was a sufferer until after she left her home, and may be so still. She so testifies, and although her husband denies all knowledge of any disorder, she is corroborated by two physicians, who have examined her since the separation, and describe her condition. Since June 3d, 1873, the husband had access to her frequently, when he must have known that she suffered, and was weakened by his acts. It is not requisite to give the particulars. Much of the case on this point depends, necessarily, upon her own evidence, which is sustained by the

family physician to the extent that she needed rest for her recovery from the delivery, the disorder that followed it, and a subsequent miscarriage in November, 1874. The wife made no complaint to any one excepting her husband, and continued to occupy the bed with him until within three days of her leaving. The evidence of Theodore G. Thomas, a physician who has made women's diseases a specialty, is that while in the situation in which he found her, soon after the separation, moderate indulgence would not damage her, yet that excessive indulgence would. He further says, although there would be pain, that a large proportion of married women assent under exactly those circumstances.

It is obvious that there should be an affectionate forbearance on the part of the husband when the wife is thus affected, and a selfish, lustful persistence, without regard to consequences, is unkind, even where no decided objection is made. But, in this case, it is charged that objections have been made, and considerable rudeness, if not force, used at times, to effect the purpose. This is the wife's statement; but it is denied by the husband, who says that the complaints were that she did not wish to have more children. She is a woman of a nervous and rather delicate constitution, and while her account may be exaggerated, we are satisfied that it is substantially correct. This evidence does not stand upon the wife's testimony alone: it is corroborated by other facts in the case, founded mainly on the defendant's own qualifications and denials of her statements.

On the night of November 3d, 1875, she complains that he was persistent and violent in his efforts, and as she arose from the bed, after his failure to succeed, he struck her in the back with his fist. She says that her cries awoke the children, and were heard by the servant. The children are too young to be examined as witnesses, and the servant, although in the employment of the complainant, is not produced. The brother of the complainant, however, testifies that the defendant told him, soon after the separation, that on that night she cried out, and left the bed. The wife remained home on

Wednesday, Thursday, and Friday following this November 2d, during which time they were separated at night, and spoke to each other but little through the day. On Saturday, November 6th, she left, taking with her the two little children, and went to her father's house, where she has since remained. These facts are a general statement of the complainant's case.

It is important to consider the relations of the parties during their marriage, and some facts since their separation, to arrive at a just conclusion in this peculiarly delicate and painful case.

It appears that the parents of the wife objected to the marriage because of the difference in their religion. He is a Catholic, and she is a Protestant. But this difference did not, apparently, cause any trouble after their marriage, for she went to church with him, or elsewhere, as she pleased. The parents also objected to some inequality in their station in life, but this was based mainly on the fact that she had received a better education, while he, working at his trade of tinsmith, was comparatively unlearned, but, by prudent management, had accumulated a moderate fortune.

After the marriage, he was always kind and affectionate, with the exception of the matters of this complaint. He provided a good home for her, and gave her every reasonable indulgence and allowance, excepting in two or three unimportant particulars, about which there is conflicting testimony. The relatives, friends and servants who have been called as witnesses, all testify that they were fond in their endearments, even in the presence of others, and that they were remarkably affectionate. The wife says that she loved him until the day after November 2d, when he was morose and sullen in his conduct. His affection for her appears to have been always strong, and continues, so that he describes himself as miserable in his separation from his wife and children, and he says he is willing to make any reasonable concessions if she will return. That he is sincere, appears from the fact that after his wife

left on Saturday afternoon while he was at his work, on Sunday morning he went to see her at her father's house, asked her forgiveness and begged her to return home with the children. He continued to call afterwards, repeatedly, with the same requests. November 10th, he sent her a letter, asking her to return, describing his pain at her leaving him, avowing his love for her, his only happiness to be with her and the children, and promising that every trouble, so far as it depended on him, should be removed; that he was willing to leave the only complaint she had ever made against him, to their doctor. He is not a scholar, but this letter is a most tender appeal to a wife, under any circumstances. In the same month of November, he requested Spencer M. Rice, a Protestant Episcopal clergyman, whose church his wife had sometimes attended, to see her, and endeavor to get her to come back to her home. Mr. Rice went and had a long conversation with the wife and her mother. He says the wife gave no decided answer, but her mother told him to say that the result of the interview was unsatisfactory.

On November 10th, 1875, Mrs. English was examined by the family physician, Dr. Latkins, at her father's house. The bill of complaint for the divorce was sworn to by her and filed the same day. This action was promptly begun while the husband was attempting to arrange for a settlement of the family troubles. He has used no threats, nor has he been offensive in his efforts to secure the return of his family; on the contrary, he has used entreaties for forgiveness, and promises of self-denial and forbearance. After this suit was commenced, on the day before Christmas, he sent the usual presents to his wife and children, with a most pathetic letter, in which he says that no Christmas present would be so good to him as to see them all back in their home again. This letter would, ordinarily, have little or no effect in a cause that had been already commenced, but in determining the character of the man, in connection with all the facts of the case, it has significance, and if it be a true expression of his feeling, will go far

to satisfy a court that the wife will not be unsafe if within the power of such a husband.

The point for determination is not whether the husband, in his rudeness, has injured his wife without sufficient thought or care of her physical health, while doing an act which, in ordinary cases, is not unlawful, injurious or dangerous, for it must be conceded, under the facts of this case, that he has thus abused his marital rights; but the true inquiry is whether the conduct of the husband has been such as to raise a reasonable apprehension that further acts of the same abuse will be committed if the wife should return to him. The court must be satisfied that the wife is in danger of bodily harm if she go back to him, or, to use the language in *Close* v. *Close*, 10 *C. E. Green* 529, that he has done and will continue to do such acts as will endanger her health, or render her life one of such extreme discomfort and wretchedness as to incapacitate her to discharge the duties of a wife. It is not the question whether she will live more comfortably at her father's house, with a liberal allowance for alimony, but whether she is released from her duty as a wife by the extreme cruelty of her husband, and the reasonable apprehension that it will continue. The principle which must decide this case does not affect these parties alone : it is of the utmost importance to all, that these bonds should not be lightly severed.

A separation from bed and board is not decreed only as a punishment for past misconduct, but mainly as a protection against future probable acts of cruelty ; this probability being based upon the former conduct, and the character and disposition of the parties. *Bishop's Mar. and Div.*, § 719, &c.

In *Shaw* v. *Shaw*, 17 *Conn.* 189, it was stated by the court that the wife had just reason to fear that her husband would compel her to occupy the same bed with him, regardless of the consequences to her health, and yet the divorce was refused. It is not necessary, if we were disposed, to go so far in this case, for we see no reasonable ground to apprehend that this defendant, whose disposition appears to be affectionate towards his family, and who has been already subjected to distress, exposure and expense, as the consequences of his misconduct,

will again transgress, with the certainty that he will, with such aggravation, be perpetually separated from his wife.

The health of the wife has also been considered. By the testimony of both physicians who have been examined, the ailment from which she has suffered is curable with proper medical treatment, and she may be in her usual good health at this time. But if it were otherwise, it is not believed that, with the knowledge he now has of her condition, he would attempt to treat her cruelly.

In conclusion, it must be clearly stated that the action of the court is not based upon any approval of the acts of this husband, of which his wife complains, nor upon his requests for her return, nor upon any formal security that he can offer for his future good behavior. Our action is founded on the history of the married life of these parties, the affection this husband has always manifested for his wife, and his repentance for his misconduct; so far as we can judge of human conduct, he is sincere, and looking at the entire case, with its own peculiar circumstances, we are of the opinion that this divorce should now be refused.

The decree is reversed, and the bill will be dismissed without prejudice, so that the facts urged in this complaint may be used if the case should again be brought before the court.

For reversal—DALRIMPLE, DEPUE, DIXON, LATHROP, LILLY, SCUDDER, VAN SYCKEL, WALES, WOODHULL.    9.

For affirmance—BEASLEY, C. J., CLEMENT, DODD, KNAPP, REED.    5.